Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/19/2020 09:09 AM CDT

**State of Nebraska, appellee, v.
Victor Guzman, appellant.**

___ N.W.2d ___

Filed March 27, 2020.    No. S-19-056.

1. **Effectiveness of Counsel: Appeal and Error.** Assignments of error
   on direct appeal regarding ineffective assistance of trial counsel must
   specifically allege deficient performance, and an appellate court will not
   scour the remainder of the brief in search of such specificity.
2. **Sentences: Appeal and Error.** When a defendant challenges a sentence
   imposed by the district court as excessive and the State believes the
   sentence to be erroneous but has not complied with Neb. Rev. Stat.
   § 29-2315.01 (Cum. Supp. 2018) or Neb. Rev. Stat. § 29-2321 (Reissue
   2016), the State may not assert such error via a cross-appeal.
3. **Appeal and Error.** An appellate court may, at its option, notice plain
   error.
4. **Sentences: Statutes: Appeal and Error.** A sentence that is contrary
   to the court's statutory authority is an appropriate matter for plain
   error review.
5. **Motions to Suppress: Confessions: Constitutional Law: Miranda
   Rights: Appeal and Error.** In reviewing a motion to suppress a
   statement based on its claimed involuntariness, including claims that
   law enforcement procured it by violating the safeguards established
   by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86
   S. Ct. 1602, 16 L. Ed. 2d 694 (1966), an appellate court applies a
   two-part standard of review. Regarding historical facts, an appellate
   court reviews the trial court's findings for clear error. Whether those
   facts meet constitutional standards, however, is a question of law,
   which an appellate court reviews independently of the trial court's
   determination.
6. **Miranda Rights: Right to Counsel.** In order to require cessation of
   custodial interrogation, the subject's invocation of the right to counsel
   must be unambiguous and unequivocal.

7. **Motions for Mistrial: Appeal and Error.** Decisions regarding motions for mistrial are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion.

8. **Trial: Prosecuting Attorneys: Appeal and Error.** When considering a claim of prosecutorial misconduct, an appellate court first considers whether the prosecutor's acts constitute misconduct.

9. **Trial: Prosecuting Attorneys: Words and Phrases.** Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various conducts because the conduct will or may undermine a defendant's right to a fair trial.

10. **Witnesses: Impeachment.** Generally, the credibility of a witness may be attacked by any party, including the party who called the witness.

11. ____: ____. One means of attacking the credibility of a witness is by showing inconsistency between his or her testimony at trial and what he or she said on previous occasions.

12. ____: ____. A party cannot impeach his or her own witness without limitation.

13. **Motions to Dismiss: Directed Verdict: Waiver: Appeal and Error.** A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence.

14. **Convictions: Evidence: Appeal and Error.** Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed favorably to the State, is sufficient to support the conviction.

15. **Criminal Law: Evidence: Appeal and Error.** When a criminal defendant challenges the sufficiency of the evidence upon which a conviction is based, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

16. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
17. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial is plainly evident from the record, affects a litigant's substantial right, and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.
18. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.
19. \_\_\_\_: \_\_\_\_. The failure to impose an indeterminate sentence when required by statute constitutes plain error.
20. \_\_\_\_: \_\_\_\_. An appellate court has the power on direct appeal to remand a cause for the imposition of a lawful sentence where an erroneous one has been pronounced.

Appeal from the District Court for Sarpy County: Stefanie A. Martinez, Judge. Affirmed in part, and in part vacated and remanded for resentencing.

Gregory A. Pivovar for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

Victor Guzman appeals from convictions, pursuant to jury verdict, and sentences for first degree sexual assault and tampering with a witness.

Two issues predominate. We again enforce our requirement that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance. And we resolve the State's uncertainty whether

sentencing error in a criminal case tried in the district court can or must be raised by a cross-appeal—concluding that generally, a cross-appeal is not permitted.

We find no merit to Guzman's claims regarding a motion to suppress, a motion for a mistrial, insufficiency of the evidence, and an excessive sentence for the sexual assault conviction. But we find plain error in the sentence for witness tampering, which should have been an indeterminate rather than a determinate sentence. We vacate that sentence and remand the cause for resentencing, but we otherwise affirm Guzman's convictions and the sentence imposed for the sexual assault conviction.

## II. BACKGROUND

We begin by setting forth the factual background for the crimes charged. Bearing in mind our standard of review, we summarize this evidence in the light most favorable to the State. Additional background relevant to particular errors assigned will be supplied in the analysis.

On September 22, 2017, B.G. held a party at her apartment, where she lived with her daughter. One of the invitees, Alexa Thomas, brought a group of eight or nine people whom B.G. did not know, including Guzman. B.G. consumed alcohol to the point of being "drunk." She also snorted cocaine. B.G. began to feel sick and told everyone to leave. She vomited and then lay down in her bedroom.

B.G. heard her bedroom door open and saw a group of unknown males standing in her doorway. She felt her clothing being removed and her arms and legs being held. B.G. testified: "I said no. I said stop. Then I just gave up . . . [b]ecause there was [sic] too many." Although B.G. did not give permission for anyone to have sex with her, she could tell that more than one male penetrated her vagina. Someone turned her head and inserted his penis in her mouth. According to an attendee at the party, Guzman said he had sex with B.G.

After B.G. began crying, the males left. B.G. checked on her daughter and then "passed out." When B.G. woke, she called

her mother and asked her to come to B.G.'s apartment. At some point, B.G. told her mother that she had a party and "got raped." B.G. went to a hospital and reported to a sexual assault nurse examiner that two assailants penetrated her vagina. A police officer spoke with B.G. at the hospital, and she told the officer that four to five males vaginally penetrated her with their penises.

Police conducted an investigation following B.G.'s report of the incident. Thomas shared with police text messages she exchanged with Guzman the morning after the party. In these text messages, Guzman told Thomas that he had video of a group of males having sex with B.G. Thomas asked if Guzman had sex with B.G., but he replied that he "was just [the] camera man." After meeting with Thomas, an officer prepared an affidavit for a search warrant for Guzman's cell phones.

The next day, officers went to Guzman's place of employment to interview him and obtain any of his digital devices capable of storing electronic media. Upon questioning by an officer, Guzman consistently denied having sex with B.G. After interviewing Guzman, police arrested him. A forensic examination of one of Guzman's cell phones uncovered three short videos taken between 6:41 and 6:49 a.m. on September 23, 2017, which showed penile-vaginal intercourse with B.G.; one video additionally showed a penis being inserted into B.G.'s mouth.

The tampering with a witness charge arose out of Guzman's October 2017 jail telephone call to Thomas. Thomas testified that Guzman wanted her to "tell [B.G.] to drop the charges." Thomas complied, telling B.G. that Guzman wanted B.G. to drop the charges.

The jury returned verdicts of guilty on first degree sexual assault and on tampering with a witness, and the court accepted the verdicts. The court imposed a sentence of 12 to 20 years' imprisonment for the sexual assault conviction and a concurrent sentence of 2 years' imprisonment for the witness tampering conviction.

Guzman appealed. The State filed a petition to bypass review by the Nebraska Court of Appeals—which we granted—and asserted a purported cross-appeal in its brief.

## III. ASSIGNMENTS OF ERROR

### 1. Guzman's Appeal

Guzman assigns that the district court erred in (1) overruling his motion to suppress, (2) failing to grant his motion for mistrial based on prosecutorial misconduct, (3) failing to grant a directed verdict, and (4) imposing excessive sentences.

Guzman also assigns that he received ineffective assistance of trial counsel. However, he failed to comply with our pronouncement regarding the specificity required for assignments of error alleging ineffective assistance of counsel.

[1] We declared last year that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance.[1] And we stated that an appellate court will not scour the remainder of the brief in search of such specificity.[2] Since announcing the requirement, we have repeated it in three published decisions.[3] The purpose of a concurring opinion released on October 11, 2019, was to "remind the practicing bar"[4] of the requirement and caution counsel that "briefs filed after April 19, 2019, which fail to comply may have consequences beyond loss of such claims."[5]

Guzman's brief—filed 3 months after our pronouncement— failed to comply. His assignment of error alleged merely that

---

[1] See *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

[2] See *id.*

[3] See *State v. Munoz*, 303 Neb. 69, 927 N.W.2d 25 (2019); *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019); and *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019). See, also, *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019).

[4] *State v. Lee, supra* note 3, 304 Neb. at 285, 934 N.W.2d at 168 (Cassel, J., concurring).

[5] *Id.* at 286, 934 N.W.2d at 168 (Cassel, J., concurring).

he "received ineffective assistance of trial counsel in numerous instances as more particularly set out hereinafter." In Guzman's reply brief, he argues that the assignment of error informed us that the particular allegations of ineffective assistance would be set forth with more particularity. And in the heading of his argument on the issue, Guzman identified five of the six particular deficiencies in all boldface and capital letters.

We decline to excuse counsel's failure to comply with our pronouncement. Recently, the Court of Appeals exercised judicial grace by examining a brief's argument section for the necessary specificity where the brief was filed 10 days after release of the opinion announcing the requirement.[6] No such grace ought to be afforded a brief filed 3 months after the pronouncement. Accordingly, we do not consider Guzman's assignment of error alleging ineffective assistance of counsel.

## 2. State's Purported Cross-Appeal

Using a belt-and-suspenders approach, the State raised a sentencing matter both as plain error in its responsive brief and in a purported cross-appeal. The State asserts that the court erred by imposing a determinate sentence for Guzman's witness tampering conviction. Its brief recognizes that the matter could be deemed one of plain error, but explains that "out of an abundance of caution and uncertainty, [the State] raise[d] the matter in a cross[-]appeal."[7] The State seeks guidance as to whether it can—and must—file a cross-appeal to raise an alleged error in sentencing where the district court was the trial court. We address this narrow question.

When a sentence imposed appeared to be erroneous and the appellant did not identify the error, the State's traditional practice has been to broach the issue in its brief as an assertion of plain error. With or without such an assertion, we have

---

[6] See *State v. Knox*, No. A-19-266, 2020 WL 215849 (Neb. App. Jan. 14, 2020) (selected for posting to court website).

[7] Brief for appellee at 36.

considered whether a sentence constituted plain error.[8] The State presumably proceeded in this manner because of case law declaring that the State has no right to cross-appeal in a criminal case when the district court is the trial court.[9]

The State suggests the appellate courts have created uncertainty in this procedure by referencing the lack of a cross-appeal in opinions where the district court was the trial court. The Court of Appeals recently refused to address the State's suggestion of error in sentencing, because the State did not cross-appeal.[10] And in two cases that did not squarely present whether the State could cross-appeal, we stated "although the State did not file a cross-appeal"[11] before considering sentencing errors urged as plain error by the State. To the extent this language has created uncertainty, we disavow any suggestion that we were implying the State could have cross-appealed in those cases.

The preclusion of a cross-appeal by the State in a criminal case where the district court is the trial court relates to the State's limited right to appeal in a criminal case. Absent specific statutory authorization, the State generally has no right to appeal an adverse ruling in a criminal case.[12] The Legislature provided two avenues for such an appeal: an exception proceeding under Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 2018)

---

[8] See, e.g., *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019); *State v. Lessley*, 301 Neb. 734, 919 N.W.2d 884 (2018); *State v. Thompson*, 301 Neb. 472, 919 N.W.2d 122 (2018); *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018); *State v. Kidder*, 299 Neb. 232, 908 N.W.2d 1 (2018); *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017).

[9] See, *State v. Halsey*, 232 Neb. 658, 441 N.W.2d 877 (1989); *State v. Martinez*, 198 Neb. 347, 252 N.W.2d 630 (1977); *State v. Schnell*, 17 Neb. App. 211, 757 N.W.2d 732 (2008). See, also, *State v. Mortensen*, 287 Neb. 158, 841 N.W.2d 393 (2014).

[10] *State v. Magallanes*, No. A-18-934, 2019 WL 3934465 (Neb. App. Aug. 20, 2019) (selected for posting to court website).

[11] See *State v. Betancourt-Garcia*, 295 Neb. 170, 190, 887 N.W.2d 296, 312 (2016). Accord *State v. Aguallo*, 294 Neb. 177, 881 N.W.2d 918 (2016).

[12] *State v. Thalken*, 299 Neb. 857, 911 N.W.2d 562 (2018).

and an excessively lenient sentence appeal authorized by Neb. Rev. Stat. § 29-2320 (Reissue 2016).[13]

The right of appeal is purely statutory.[14] A court rule provides in part that "[t]he proper filing of an appeal shall vest in an appellee the right to a cross-appeal against any other party to the appeal."[15] But a court rule cannot provide a right to appeal that does not exist in statute. And here, the State did not comply with the statutory prerequisites to appeal,[16] the dictates of which are to be strictly construed against the government.[17] Thus, it could not assert a cross-appeal. We express no opinion as to whether the State could assert a cross-appeal if it had complied with those statutory requisites.

[2-4] When a defendant challenges a sentence imposed by the district court as excessive and the State believes the sentence to be erroneous but has not complied with § 29-2315.01 or § 29-2321, the State may not assert such error via a cross-appeal. We see no error in the traditional procedure where the State identifies any plain sentencing errors in its responsive brief. An appellate court may, at its option, notice plain error.[18] A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review.[19]

## IV. ANALYSIS

### 1. Motion to Suppress

#### (a) Additional Background

Law enforcement officers interviewed Guzman and recorded the conversation. When Guzman was brought into a room at

---

[13] See *State v. Vasquez*, 271 Neb. 906, 716 N.W.2d 443 (2006).

[14] *State v. Thalken, supra* note 12.

[15] Neb. Ct. R. App. P. § 2-101(E) (rev. 2015).

[16] See, § 29-2315.01 and Neb. Rev. Stat. § 29-2321 (Reissue 2016).

[17] See *State v. Stafford*, 278 Neb. 109, 767 N.W.2d 507 (2009).

[18] See *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017), *modified on denial of rehearing* 296 Neb. 606, 894 N.W.2d 349.

[19] *State v. Kantaras*, 294 Neb. 960, 885 N.W.2d 558 (2016).

his place of employment, a detective identified himself as a police officer and read Guzman his *Miranda* rights. There is no dispute that from that point forward, Guzman was in custody.

Guzman moved to suppress his statements to police. He claimed that at almost 2 hours into the interview, he "clearly invoked his right to counsel, asking if he had the opportunity to get a lawyer, to which officers responded no."

At the hearing on the motion to suppress, a detective testified that Guzman began asking questions "about when he could get a lawyer." According to the detective, Guzman did not say he wanted a lawyer; rather, "he just asked about the process of getting one." The detective testified: "We were talking about the search warrant. Essentially he was asking questions if he could get an attorney to deal with . . . the search warrant, if it could be stopped."

The court overruled the motion to suppress. With regard to the invocation of a right to counsel, the court stated:

> [A]t the 1 hour, 54 minute mark, [Guzman] asked officers, "Can I talk to a lawyer first?" . . . [W]hen putting it in the context of what was occurring during said exchange, the Court finds that [Guzman] did not clearly invoke his rights. Specifically, law enforcement [officers were] in the process of searching [Guzman's] phone, and while doing so, [Guzman] was conversing with them about the search and asked if he could speak with a lawyer before they searched his phone. [They] informed him that they already had a search warrant and that he did not get to speak to an attorney before they conducted the search. Thus, the Court finds that [Guzman's] statement of "Can I talk to a lawyer first" was in the context of the search, rather than a clear invocation of his Miranda rights for purposes of the custodial interrogation.

### (b) Standard of Review

[5] In reviewing a motion to suppress a statement based on its claimed involuntariness, including claims that law

enforcement procured it by violating the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*,[20] an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts meet constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination.[21]

### (c) Discussion

On appeal, Guzman does not dispute that he waived his *Miranda* rights during the custodial interrogation. "[A]fter a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney."[22] And Guzman does not challenge the district court's factual findings. Rather, Guzman argues that he requested an attorney at the 1-hour-54-minute mark of the recorded interrogation and that thus, any statements he made should have been suppressed.

[6] In order to require cessation of custodial interrogation, the subject's invocation of the right to counsel must be unambiguous and unequivocal.[23] "Statements such as '"[m]aybe I should talk to a lawyer"' or '"I probably should have an attorney"' do not meet this standard."[24] Guzman contends that his question—"'Can I talk to a lawyer first?'"—was a clear invocation of the right to counsel. We disagree. "An expression of doubt or uncertainty cannot be considered unequivocal."[25] Similarly, an Arizona court determined that "'Do you think I

---

[20] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[21] *State v. Clifton*, 296 Neb. 135, 892 N.W.2d 112 (2017).

[22] *Davis v. United States*, 512 U.S. 452, 461, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994).

[23] *State v. Goodwin*, 278 Neb. 945, 774 N.W.2d 733 (2009).

[24] *Id.* at 959, 774 N.W.2d at 744-45.

[25] *State v. Lynch*, 169 N.H. 689, 697, 156 A.3d 1012, 1019 (2017).

should get a lawyer?'" does not constitute an invocation of right to counsel.[26] Here, Guzman never explicitly stated that he wished to have an attorney present.

The circumstances surrounding an alleged invocation are part of the objective inquiry into whether such an invocation of the right to counsel was made. The U.S. Supreme Court explained that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [the Court's] precedents do not require the cessation of questioning."[27] Here, the officers perceived Guzman's question about an attorney to be in connection with the search for his cell phones and not an assertion that Guzman did not wish to speak without an attorney present. That perception was reasonable under the circumstances. The district court did not err in overruling Guzman's motion to suppress.

## 2. Motion for Mistrial

### (a) Additional Background

In March 2018, Ruben Rodriguez was deposed on Guzman's behalf. At trial, the State called Rodriguez as a witness during the State's case in chief. When asked where he had lived in the past 5 years, Rodriguez provided information which was inconsistent with his deposition testimony. When Rodriguez testified that he saw B.G. at her party in October 2017, the prosecutor impeached him with his deposition testimony that the party was in September. When Rodriguez named seven people with whom he went to the party, the State pointed out that Rodriguez testified in his deposition that he went to the party with four individuals. During trial, Rodriguez also gave answers different from those in his deposition as to when he took an individual home, how may beers he consumed at the

---

[26] See *State v. Prince*, 160 Ariz. 268, 272, 772 P.2d 1121, 1125 (1989).

[27] *Davis v. United States, supra* note 22, 512 U.S. at 459 (emphasis in original).

party, whether a certain individual was at the party, whether he saw Guzman walk B.G. up the stairs, and whether he made a "gas station run."

In a conversation out of the jury's presence and unprompted by defense counsel, the court raised a concern that Rodriguez provided no substantive evidence. The court opined that "the sole purpose for hi[s] being called was to discredit him in any testimony he may have," which the court did not think was permissible. The prosecutor responded that he expected Rodriguez would testify consistently with his deposition. Because Rodriguez did not, the prosecutor wanted "to make sure that the record's clear on what he's testifying to." The prosecutor stated that he did not call Rodriguez "simply to impeach him." The court then directed the parties to brief whether it is permissible to call a witness for the limited purpose of discrediting the witness. With the jury present, the court announced, "There ha[ve] been some conversations between Counsel and I need them to follow up on something for me, so we're going to be recessing for the weekend a little bit early today."

When trial resumed after the weekend break, Guzman moved for a mistrial. His counsel explained that he subpoenaed Rodriguez, because Rodriguez had exculpatory information, but that "what the State did was discredit that witness before [the defense] could call him and elicit the exculpatory information." The State argued that it "can't control whether someone is going to get up there and lie or not, and they [sic] had no reason to expect them [sic] to." The court found that there was not sufficient evidence that the State called Rodriguez for the purpose of impeachment.

### (b) Standard of Review

[7] Decisions regarding motions for mistrial are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion.[28]

---

[28] *State v. Schmaltz*, 304 Neb. 74, 933 N.W.2d 435 (2019).

### (c) Discussion

Guzman argues that the court erred in not granting his motion for mistrial based on prosecutorial misconduct. Before considering whether a mistrial would be proper, we must determine whether there was misconduct by the prosecution.

[8,9] When considering a claim of prosecutorial misconduct, an appellate court first considers whether the prosecutor's acts constitute misconduct.[29] Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various conducts because the conduct will or may undermine a defendant's right to a fair trial.[30] Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused.[31] A prosecutor's conduct that does not mislead and unduly influence the jury is not misconduct.[32]

According to Guzman, the prosecutor engaged in misconduct by calling Rodriguez as a witness and impeaching him with testimony from his deposition on "trivial matters."[33] Guzman contends that the State attacked Rodriguez' credibility before Guzman could call Rodriguez as a witness.

[10-12] Generally, the credibility of a witness may be attacked by any party, including the party who called the witness.[34] One means of attacking the credibility of a witness is by showing inconsistency between his or her testimony at trial and what he or she said on previous occasions.[35] But a party cannot impeach his or her own witness without limitation.[36]

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] Brief for appellant at 25.

[34] *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015).

[35] *Id.*

[36] *Id.*

The State's impeachment of Rodriguez does not amount to prosecutorial misconduct. The State called Rodriguez to testify, because he had information useful to the State's case. The State had no reason to anticipate that Rodriguez would not testify consistently with his sworn deposition testimony. Assuming without deciding that Guzman's motion for mistrial was timely, the court did not abuse its discretion in overruling the motion.

### 3. Motion for Directed Verdict

#### (a) Additional Background

[13] Guzman challenges the denial of his motion for directed verdict, but he waived the issue by presenting evidence. After the court overruled Guzman's motion for a directed verdict of acquittal on both charges, the defense proceeded to call a witness. A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence.[37] We consider Guzman's argument as one challenging the sufficiency of the evidence.

#### (b) Standard of Review

[14] Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed,

---

[37] *State v. Briggs, supra* note 8.

in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.[38]

### (c) Discussion

[15] When a criminal defendant challenges the sufficiency of the evidence upon which a conviction is based, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[39] The State met its burden with respect to both charges.

With respect to the sexual assault charge, Guzman's brief does little more than attack the credibility of B.G. But an appellate court does not pass on the credibility of witnesses or reweigh the evidence. B.G. testified that she did not consent to having sex with anyone on the night of her party, and an attendee at the party testified that Guzman said he had sex with B.G. There was also abundant testimony about B.G.'s intoxication. Viewing the evidence most favorably to the State, a fact finder could conclude that Guzman subjected B.G. to sexual penetration without her consent or under circumstances when he knew or should have known that B.G. was mentally or physically incapable of resisting or appraising the nature of her conduct.[40]

Guzman also contends that the State failed to adduce sufficient evidence to support the charge of tampering with a witness. Under Neb. Rev. Stat. § 28-919(1) (Reissue 2016):

> A person commits the offense of tampering with a witness or informant if, believing that an official proceeding or investigation of a criminal or civil matter is pending or about to be instituted, he or she attempts to induce or otherwise cause a witness or informant to:

---

[38] *State v. Case*, 304 Neb. 829, 937 N.W.2d 216 (2020).

[39] *Id.*

[40] See Neb. Rev. Stat. § 28-319(1) (Reissue 2016).

(a) Testify or inform falsely;

(b) Withhold any testimony, information, document, or thing;

(c) Elude legal process summoning him or her to testify or supply evidence; or

(d) Absent himself or herself from any proceeding or investigation to which he or she has been legally summoned.

Guzman asserts that he merely relayed a message asking B.G. to drop the charges and that such action did not constitute tampering with a witness. He claims that he did not threaten or bribe B.G., did not ask her to testify falsely, and did not ask her not to go to court. But B.G. reported that she was sexually assaulted. By asking B.G. to drop the charges, Guzman was essentially asking her to inform falsely or to withhold information. The State adduced sufficient evidence at trial to support the conviction for tampering with a witness.

### 4. Sentences

#### (a) Additional Background

Finally, Guzman argues that his sentences were excessive. For first degree sexual assault, a Class II felony,[41] the court imposed a sentence of 12 to 20 years' incarceration. At the time of the crime and sentencing, tampering with a witness was a Class IV felony.[42] For that conviction, the court imposed a concurrent sentence of 2 years.

#### (b) Standard of Review

[16] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[43]

[17] Plain error may be found on appeal when an error unasserted or uncomplained of at trial is plainly evident from the

---

[41] See § 28-319(2).

[42] See § 28-919(3).

[43] *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020).

record, affects a litigant's substantial right, and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. [44]

### (c) Discussion

[18] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. [45] In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. [46] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. [47]

Guzman argues that an examination of the presentence report shows the sentencing factors weigh in favor of a lighter sentence. Some do. According to the presentence report, Guzman was 21 years old, was a high school graduate, and was consistently employed prior to incarceration. His minimal criminal record consisted of traffic violations, an "MIP," and a curfew violation. But other considerations do not favor a light sentence. An instrument designed to determine a defendant's risk for recidivism put him in the high risk range to reoffend. With respect to the charges he stated: "'Bullshit. It's embarrassing and has affected everyone around me. This case has ruined

---

[44] *State v. Briggs, supra* note 8.

[45] See *State v. Iddings, supra* note 43.

[46] *Id.*

[47] *Id.*

my character. It's the worst thing that could have happened to me.'" We cannot say that the court abused its discretion in sentencing Guzman.

However, the State asserts that the court's sentence for the witness tampering conviction was erroneous. Here, the court imposed a sentence for a Class II felony and a concurrent determinate sentence for a Class IV felony for offenses occurring in 2017. But a statute provides:

> *For any sentence of imprisonment for a Class . . . IV felony . . . imposed consecutively or concurrently with . . . a sentence of imprisonment for a Class . . . II . . . felony, the court shall impose an indeterminate sentence* within the applicable range in section 28-105 that does not include a period of post-release supervision, in accordance with the process set forth in section 29-2204.[48]

[19,20] The court plainly erred by imposing a determinate sentence for the Class IV felony. The failure to impose an indeterminate sentence when required by statute constitutes plain error.[49] An appellate court has the power on direct appeal to remand a cause for the imposition of a lawful sentence where an erroneous one has been pronounced.[50] We therefore vacate Guzman's sentence for tampering with a witness and remand the cause for resentencing on that conviction.

### V. CONCLUSION

Because Guzman failed to include the required specificity in his assignment of error alleging ineffective assistance of trial counsel, we do not consider it. And we clarify that the State has no right to cross-appeal under these circumstances.

We conclude that the court did not err in overruling Guzman's motion to suppress and motion for mistrial. Viewing the evidence in the light most favorable to the State, we further

---

[48] Neb. Rev. Stat. § 29-2204.02(4) (Reissue 2016) (emphasis supplied).

[49] *State v. Briggs, supra* note 8.

[50] See *State v. Kantaras, supra* note 19.

conclude that the evidence at trial supported Guzman's convictions. Finally, we determine that the court did not impose excessive sentences. However, because the court erred by imposing a determinate sentence for the witness tampering conviction, we vacate that sentence and remand the cause for resentencing on that count only.

Affirmed in part, and in part vacated
and remanded for resentencing.