IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. KHALAF

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ADRIS K. KHALAF, APPELLANT.

Filed May 11, 2021.    No. A-20-607.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge, on appeal thereto from the County Court for Lancaster County: MATTHEW L. ACTON, Judge. Judgment of District Court affirmed.

Sean M. Reagan and Megan E. Shupe, of Reagan, Melton & Delaney, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

I. INTRODUCTION

Adris K. Khalaf appeals from his jury conviction of third degree sexual assault. Khalaf alleges that the district court erred in affirming his conviction and sentence and in failing to find plain error. He further alleges that his counsel on appeal to the district court was ineffective. Based on the reasons that follow, we affirm.

II. BACKGROUND

On September 3, 2019, the State filed an amended complaint alleging that on or about June 28, Khalaf committed three counts of third degree sexual assault against A.K. Count 1 alleged that Khalaf had made nonconsensual contact with A.K.'s breast; count 2 alleged nonconsensual contact with A.K.'s buttocks; and count 3 alleged nonconsensual contact between A.K. and Khalaf's penis.

- 1 -

Third degree sexual assault is a Class I misdemeanor, punishable by up to 365 days in jail, a $1,000 fine, or both. Neb. Rev. Stat. § 28-106 (Reissue 2016).

Khalaf filed a pretrial motion in limine requesting that the county court prohibit the State from presenting evidence related to Khalaf's use of controlled substances. The court overruled the motion. A jury trial on the State's complaint was held on November 12 through 15, 2019.

At trial, A.K. testified that on June 28, 2019, she and her 14-year-old son, J.K., decided to explore a system of underground tunnels near Ballard Park in Lincoln, Nebraska. A.K. testified that she "felt leery" about going inside the tunnels, but she stated that J.K. is autistic and often becomes fixated on particular ideas, so she gave into his requests to explore the tunnels. Because of her concerns, A.K. and J.K. brought a baseball bat and a cane to the tunnels in case they ran into any "ornery teenagers." A.K. testified that because there was no light in the tunnels, she and J.K. used the flashlight application on their cell phones to see.

A.K. testified that after walking through the tunnel for a little while, she and J.K. met a man who was smoking a "white glass" pipe. She testified, over Khalaf's objection, that the substance the man was smoking did not smell like tobacco or marijuana and that she assumed it was methamphetamine. At trial, A.K. identified the man as Khalaf, and she testified that he began to walk with her and J.K. She testified that J.K. refused to return to the park when she told him they should leave the tunnels.

At some point, J.K. pulled away from the group, leaving A.K. and Khalaf behind. A.K. testified that Khalaf asked her for a "blow job," to which she responded, "My son's here. No." After this, Khalaf continued to walk with them, and A.K. further testified that Khalaf "slapped [her] butt" while J.K.'s back was turned. When Khalaf touched her buttocks, A.K. repeated "No, my son's here" and moved her body away from him. She testified that Khalaf then put his arm around her shoulders and "grabbed the outside of [her] breast" and "squeezed" through her clothes. A.K. testified that she "shrugged him off" and told Khalaf "My son's here. This is about my son." She testified that Khalaf did not react to her attempts to rebuff him and continued to walk through the tunnels with her and J.K. Throughout this time, Khalaf continued to smoke from the glass pipe.

A.K. testified that while she was in the tunnels, she tried to text her cousin about Khalaf "[b]ecause [she] felt unsafe." She stated that she was terrified, but that she kept quiet and continued walking because she did not want to endanger either herself or J.K. As they continued through the tunnels, Khalaf put his hand down the back of A.K.'s shorts to touch her buttocks, and he told A.K. that she "felt so good." A.K. again "wiggled him off" and reminded Khalaf that J.K. was present. Khalaf responded by saying "[y]ou feel so good, though." Khalaf then put his hand on A.K.'s breast again, this time "skin to skin."

A.K. further testified that Khalaf again put his hands down her shorts and that he "put his finger in [her] rectum, the tip of his finger." After A.K. tried to push Khalaf off, "he grabbed [A.K.'s] hips and put his penis between [her] butt cheeks." A.K. testified that at that point "she gave up" fighting against Khalaf because she did not want her son "to ever think or see this." A.K. and Khalaf stopped walking, and A.K. put her hands against the tunnel wall. She testified that eventually she "felt wetness down there," by which she meant "his cum," and she tried to get Khalaf to stop, which he eventually did. A.K. testified that while this was happening, J.K. had walked far ahead and rounded a corner in the tunnels.

- 2 -

After approximately 45 minutes spent in the tunnels, A.K. was able to turn back toward the entrance. Khalaf accompanied A.K. and J.K. back to the park, and A.K. testified that Khalaf continually attempted to touch her while they walked. She testified that J.K. wanted to take a photo with Khalaf, which A.K. agreed to in case she needed "evidence" later on. A.K. also gave Khalaf her phone number when he asked. The picture of A.K., J.K., and Khalaf was received into evidence. A.K. testified that she and J.K. then exited the tunnels and went home.

A.K. testified that she did not immediately call the police about the incident with Khalaf because she "was in shock," but she did go to the police station after 1 or 2 hours, "once [she] brought [her] head around what happened." While at the police station, Khalaf called A.K.'s phone. After leaving the police station, A.K. went to the hospital so that a sexual assault examination could be performed.

On cross-examination, A.K. admitted that Khalaf never made any threatening statements to her or to J.K. She denied smoking marijuana before going to the tunnels, but she admitted that she did not recall if she had smoked marijuana prior to going to the hospital.

A.K.'s son, J.K., testified, and his account was generally consistent with A.K.'s testimony. J.K. identified Khalaf as the man he had seen in the tunnels. J.K. testified that he stayed in front of the group while A.K. and Khalaf walked behind him. He testified that sometimes he would look behind, and Khalaf would instruct him to "look away." J.K. further testified that "most of the time" they were in the tunnels, A.K. and Khalaf were out of his sight. On cross-examination, J.K. testified that he had never seen Khalaf touch A.K. at any time except when they stood together to take a picture. He described Khalaf as "really nice" and stated that A.K. "seem[ed] fine." On cross-examination, J.K. testified that as they were walking through the tunnels, Khalaf walked in front of A.K.

In between witnesses, and outside the presence of the jury, the court conducted a *Jackson v. Denno* hearing, see *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), regarding statements Khalaf made to Officer Kelsey Anderson of the Lincoln Police Department. After hearing Anderson's testimony regarding a "controlled call" she had with Khalaf while pretending to be A.K., the county court ruled that Khalaf's statements from the controlled call were admissible. Further details regarding the *Jackson v. Denno* hearing are more fully set forth in the analysis section below.

The State called Anderson to testify at trial. Anderson interviewed A.K. at the police station when she made her initial report. Approximately 20 minutes after the interview began, A.K. received a phone call from Khalaf. Anderson testified that she had inadvertently failed to record the conversation between A.K. and Khalaf. She testified that she remembered Khalaf asking "Did I?" and "You did ask me not to touch?" in response to A.K.'s comments that he had hurt her.

Anderson testified that the day after A.K. made her initial report, she participated in a "controlled telephone call" to Khalaf. Anderson explained that a controlled call is when an "officer is recording a call to a suspect of an investigation" for the purpose of gaining "admissions about the incident from the suspect." Anderson testified that she used A.K.'s cell phone, which had been turned over to police, to call Khalaf. She testified that the call was recorded and that no one else was in the room with her when the call was placed. Anderson testified that a male voice, which she recognized to be Khalaf's, answered the call. She did not identify herself as a police officer to Khalaf.

The State offered a copy of the recorded call into evidence, and the county court received it over Khalaf's objection on hearsay grounds. The recording was played for the jury with a limiting instruction that the jury should only consider Anderson's statements as "contextual background" for Khalaf's statements. The court also received a written transcription of the controlled call, which was published to the jury for demonstrative purposes only.

During the controlled call, Anderson asked Khalaf questions such as "What about when you were behind me?" and "What did you do to hurt me?" in hopes of obtaining an admission from him. However, throughout the call, Khalaf did not acknowledge that he had hurt A.K., nor did he make any incriminating statements. The recorded call reflected that Khalaf made several requests to meet with A.K. in person.

The State then called Investigator Dustin Romshek to testify. Romshek testified that he met with A.K. at the hospital while she was receiving a sexual assault examination. He testified that the number A.K. received from the man in the tunnels matched the police database listing for Khalaf. Romshek collected A.K.'s cell phone from her, and he testified that he used that phone to send text messages to Khalaf. The State offered screenshots of the text messages between Khalaf and Romshek as an exhibit, and Khalaf objected on grounds that the text messages had not been the subject of a *Jackson v. Denno* hearing and also on hearsay grounds. The county court overruled Khalaf's objections and received the exhibit subject to a limiting instruction.

The text messages between Khalaf and Romshek reflected that Khalaf did not make any incriminating statements to Romshek. On cross-examination, Romshek agreed that he had never identified himself as a police officer to Khalaf. The State then presented the testimony of a second police investigator who had worked with Romshek during the case and whose testimony was generally consistent with Romshek's.

Tammy Douglas, the registered nurse who conducted the sexual assault examination on A.K., testified at trial. Douglas testified that A.K. reported to her that she and her son had been exploring the tunnels near Ballard Park and had met a man there. A.K. told Douglas that the man touched her breasts and buttocks and that the man "pulled down her shorts, placed his penis between [A.K.'s] butt cheeks, and proceeded to pump there for a while." A.K. also reported to Douglas that the man had placed his finger in her rectum. Douglas testified that after hearing A.K.'s account, she collected A.K.'s clothes and took DNA swabs of A.K.'s buttocks, breasts, and rectum. Douglas also collected A.K.'s e-cigarette, because A.K. reported that she had permitted the man in the tunnels to use it.

Danielle Oshlo, a forensic scientist with the Nebraska State Patrol Crime Lab, testified. Oshlo testified that she had conducted tests on the swabs taken from A.K. to search for body fluids or other DNA to compare with Khalaf's DNA profile. Oshlo testified that A.K.'s rectal swab and the swabs from her buttocks and breasts all tested negative for male DNA. Testing on the mouthpiece of A.K.'s e-cigarette showed that Khalaf was "included" as a contributor to the DNA found.

Oshlo further testified that she tested A.K.'s shirt and shorts for the presence of semen, and that the test came back negative. Oshlo then performed a DNA test on a swab taken from the "interior edge of the waistband of the shorts." The result of the DNA test was a "mixture consistent with two individuals." Oshlo testified that A.K. was the "major contributor" to the DNA sample from the shorts, but that the "minor contributor" was "uninterpretable." She testified that she also

performed a DNA test on a swab taken from the waistband of A.K.'s underwear, which yielded a "mixture consistent with two individuals . . . in which a male DNA profile was also detected." Oshlo compared the male DNA detected on A.K.'s underwear to Khalaf's DNA profile and found that the mixture was "1.40 times 10 to the sixth power" (or 1.4 million) times more likely that A.K. and Khalaf were both contributors to the DNA mixture than A.K. and a random individual.

On cross-examination, Oshlo admitted that "it is possible that if one person touches an item and then another person touches that same item, that they can pick up DNA from the first person." She explained that this process is known as "secondary transfer" and that there are studies that show that DNA can be detected as a result of secondary transfer.

Following Oshlo's testimony, the State rested its presentation of evidence. Khalaf made an oral motion to dismiss the case for failure to make a prima facie case of third degree sexual assault, which the court overruled. Khalaf did not present any evidence.

The jury returned a verdict of guilty on count 2, which alleged Khalaf had nonconsensual sexual contact with A.K.'s buttocks. The jury acquitted Khalaf on count 1 (contact with A.K.'s breast) and count 3 (contact between A.K. and Khalaf's penis). The county court accepted the jury's verdict and ordered a presentence investigation. On January 3, 2020, Khalaf was sentenced to 365 days in jail.

Khalaf timely appealed his conviction and sentence to the district court for Lancaster County, represented by different counsel than at trial. Although Khalaf's notice of appeal was filed on January 15, 2020, his appellate counsel did not file a statement of errors until 4 months later, in May 2020. Khalaf's statement of errors assigned that his conviction was not supported by sufficient evidence and that he received ineffective assistance of trial counsel when his counsel (a) failed to investigate potential witnesses, (b) failed to advise him of his right to testify in his own defense, and (c) failed to present evidence at the *Jackson v. Denno* hearing.

In a written order, the district court affirmed Khalaf's conviction and sentence. The court found that Khalaf's statement of errors had not been timely filed and that, as a result, the court was limited to plain error review. After reviewing the record, the district court did not find plain error. This appeal followed.

## III. ASSIGNMENTS OF ERROR

Khalaf assigns, restated and reordered, that the district court erred in (1) failing to find plain error where the evidence was insufficient to sustain Khalaf's convictions, (2) failing to find plain error where the record shows that Khalaf's trial counsel was ineffective for failing to present evidence at the *Jackson v. Denno* hearing, and (3) failing to find plain error related to the admission of evidence of Khalaf's use of controlled substances. Khalaf further assigns (4) his counsel on direct appeal to the district court was ineffective for failing to timely file a statement of errors.

## IV. STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Thalken*, 299 Neb. 857, 911 N.W.2d 562 (2018). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's

inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* When deciding appeals from criminal convictions in county court, we apply the same standards for review that we apply to decide appeals from criminal convictions in district court. *Id.*

Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020). Plain error exists where there is an error, plainly evidenced from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Id.*

A claim that defense counsel provided ineffective assistance of counsel presents a mixed question of law and fact. *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to questions of counsel's performance or questions of prejudice to the defendant, an appellate court reviews such legal determinations independently of the lower court's conclusion. *Id.*

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Khalaf assigns that the district court erred by failing to find, under plain error review, that there was insufficient evidence to sustain his conviction for third degree sexual assault. He argues that A.K.'s testimony that Khalaf touched her buttocks was not credible and that the DNA evidence presented by the State was inconclusive and misleading. Khalaf also highlights portions of J.K.'s testimony which conflicted with A.K.'s version of events.

However, in reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh evidence; such matters are for the finder of fact. *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020). When a criminal defendant challenges the sufficiency of the evidence upon which a conviction is based, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Neb. Rev. Stat. § 28-320 (Reissue 2016) provides, in pertinent part, that sexual assault in the third degree occurs when a person "subjects another person to sexual contact without consent of the victim" and where "the actor shall not have caused serious personal injury to the victim." Neb. Rev. Stat. § 28-318(5) (Reissue 2016) defines "sexual contact" as "the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts . . . for the purpose of sexual arousal or gratification of either party."

The jury convicted Khalaf on count 2 of committing sexual assault in the third degree by having nonconsensual sexual contact with A.K.'s buttocks. With respect to this conviction, Khalaf's arguments are confined solely to attacks upon the credibility of the witnesses and alleged conflicts in the evidence. But an appellate court does not pass on the credibility of witnesses or reweigh the evidence; such matters are for the finder of fact. *State v. Guzman, supra*.

At trial, A.K. testified that Khalaf slapped her on the buttocks and that he put his hand down the back of her shorts. Her testimony and the text messages received into evidence show that Khalaf was interested in A.K. for sexual reasons. Male DNA was found on a swab taken from the waistband of A.K.'s underwear, and Khalaf's DNA profile was included as a possible contributor to the sample. Oshlo testified that it was 1.4 million times more likely that it was Khalaf's DNA than the DNA of another random individual.

Viewing the evidence in the light most favorable to the State, there was sufficient evidence for the jury to find Khalaf guilty of third degree sexual assault. Accordingly, the district court did not err when it failed to find plain error on the record. This argument fails.

### 2. *JACKSON V. DENNO* HEARING

Khalaf assigns that the district court erred when it failed to find, under plain error review, that his trial counsel ineffectively represented him at the *Jackson v. Denno* hearing. He argues that his due process rights were violated by the admission of the controlled call and the text messages between himself and law enforcement, and he further argues that his counsel rendered ineffective assistance for "fail[ing] to present any evidence" at the hearing. Brief for appellant at 22.

In *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), the U.S. Supreme Court held that courts must institute fair procedures to determine whether a confession is voluntary, because involuntary or coerced confessions cannot be introduced into evidence. While the totality of the circumstances weighs on the question whether a statement was voluntary, "'coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the 14th Amendment.'" *State v. Grant*, 293 Neb. 163, 178, 876 N.W.2d 639, 655 (2016) (quoting *State v. Garner*, 260 Neb. 41, 614 N.W.2d 319 (2000)). Generally, a statement freely and voluntarily given without any compelling influences is admissible. *State v. Connelly*, 307 Neb. 495, 949 N.W.2d 519 (2020). To meet the requirement that a defendant's statement, admission, or confession was made freely and voluntarily, the evidence must show that such statement, admission, or confession was not the product of any promise or inducement--direct, indirect, or implied--no matter how slight. *Id.*

Here, the evidence presented by the State at the hearing and at trial showed that police officers retrieved A.K.'s phone from her and used it to communicate with Khalaf. First, Romshek sent text messages to Khalaf in an attempt to get a confession; subsequently, Anderson pretended to be A.K. and called Khalaf. Khalaf was not in custody during either of these conversations, and the record demonstrates that Khalaf was unaware he was speaking to law enforcement officers. There is no indication on the record that Khalaf was coerced in any way by Romshek or Anderson. Neither does the record suggest that there existed additional evidence related to the voluntariness of Khalaf's statements which his trial counsel failed to present. Notably, neither the trial record nor Khalaf's brief on appeal suggest that law enforcement made any promises or otherwise induced him to speak with police. Nor does Khalaf deny that at all times, he was completely free to terminate the conversations. See *State v. Connelly, supra*. Considering the totality of the circumstances, the record does not support a finding that Khalaf's statements were anything but voluntary.

Based on a review of the record before us, we cannot say that the district court erred in failing to find plain error in trial counsel's representation of Khalaf at the *Jackson v. Denno*

hearing. There is nothing in the record to suggest that Khalaf's trial counsel performed deficiently. Moreover, we determine that Khalaf would be unable to prove prejudice resulting from the admission of the controlled conversations, because the record shows that he made no incriminating statements to law enforcement. Even if Khalaf's trial counsel had successfully argued that Khalaf's statements were inadmissible, their exclusion would not have changed the outcome of Khalaf's trial. See *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021) (to show prejudice, defendant must demonstrate reasonable probability that but for counsel's deficient performance, result of proceeding would have been different.) This argument fails.

### 3. EVIDENCE OF KHALAF'S DRUG USE

Khalaf next assigns that the district court erred when it failed to find plain error when the county court admitted testimony that Khalaf smoked methamphetamine while in the tunnels with A.K. In the alternative, Khalaf assigns that the district court erred in failing to find plain error where his counsel was ineffective for failing to preserve objections to such evidence.

To begin with, whether the county court committed plain error by admitting testimony related to Khalaf's drug use is not an appropriate issue for plain error review. Plain error may be found on appeal when a prejudicial error is *unasserted or uncomplained of at trial. State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020) (emphasis supplied). The Nebraska Supreme Court has held that where an issue is raised and complained of at trial, it cannot be the basis of a finding of plain error on appeal. *State v. Jones*, 293 Neb. 452, 878 N.W.2d 379 (2016).

Here, the record shows that prior to trial, Khalaf's counsel filed a pretrial motion in limine seeking to exclude evidence of Khalaf's use of controlled substances, which was overruled by the county court. The record further shows that Khalaf's trial counsel objected when the State solicited testimony from A.K. and J.K. that Khalaf was smoking from a glass pipe while in the tunnels. Therefore, the admission of this evidence is not an appropriate subject for plain error review. This argument fails.

For the same reasons, Khalaf's argument that the district court erred in not finding plain error where his counsel was ineffective for failing to preserve the issue for appellate review also fails. As discussed above, the record demonstrates that Khalaf's trial counsel filed a pretrial motion in limine and objected to testimony related to Khalaf's drug use. The record conclusively shows that trial counsel was not ineffective because counsel did preserve this issue for a future appeal. Therefore, the district court did not err when it failed to find plain error.

### 4. FAILURE TO FILE STATEMENT OF ERRORS

Lastly, Khalaf assigns that his counsel on appeal to the district court rendered ineffective assistance by failing to timely file a statement of errors. The late-filed statement of errors in Khalaf's appeal before the district court alleged that (1) his conviction was not supported by sufficient evidence and that he received ineffective assistance of trial counsel when his counsel (2) failed to investigate potential witnesses and present a defense, (3) failed to present evidence at the *Jackson v. Denno* hearing, and (4) failed to advise him of his right to testify in his own defense. Khalaf not only argues that his counsel's performance was deficient, but that he was prejudiced as a result of the deficiency "because whether or not he was entitled to relief on any of these errors was not determined on their merit." Brief for appellant at 16.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred. *Id.* But the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

When raising an ineffective assistance claim on direct appeal, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *Id.*

This case is factually similar to *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019). As in Khalaf's case, Sundquist's counsel on appeal to the district court failed to timely file a statement of errors. On appeal to the Supreme Court, Sundquist assigned that his first appellate counsel was ineffective. The Supreme Court applied *Strickland v. Washington, supra*, finding that the record conclusively demonstrated that Sundquist could not prove that he had been prejudiced by his counsel's deficient performance because none of the arguments raised in the late-filed statement of errors would have been successful.

Applying the same reasoning from *Sundquist*, we determine that Khalaf would be unable to prove prejudice resulting from his counsel's failure to timely file a statement of errors or that his assignments of ineffective assistance of counsel are insufficiently pled to avoid a procedural bar. We discuss each of the four assignments from Khalaf's statement of errors below.

(a) Sufficiency of Evidence

The first assignment of error before the district court was that there was insufficient evidence to sustain Khalaf's conviction for third degree sexual assault. As we discussed above, the record shows that there is sufficient evidence. We conclude that Khalaf was not prejudiced by his appellate counsel's failure to timely challenge the sufficiency of the State's evidence.

(b) Failure to Investigate and Present Evidence

The second and third assignments from the statement of errors allege that Khalaf's trial counsel failed to investigate potential witnesses and that counsel failed to present evidence at the *Jackson v. Denno* hearing. In his brief, Khalaf does not address the merits of these two assignments of error, and thus he does not specify what witnesses his counsel should have investigated, what their testimony would have been, nor what evidence his counsel failed to present at the *Jackson v. Denno* hearing or at trial. Rather, Khalaf's argument before this court relies on the claim that the

failure to file a statement of errors was deficient performance and goes no further. Yet the opinion in *State v. Sundquist, supra,* shows that this is not a sufficient showing to successfully prove a claim of ineffective assistance for failure to file a statement of errors. In that case, the Supreme Court analyzed the merits of the underlying claims raised in the statement of errors and determined that "the defendant's arguments did not demonstrate a reasonable probability that but for his counsel's allegedly deficient performance, the result of the proceeding would have been different." *State v. Sundquist*, 301 Neb. at 1015, 921 N.W.2d at 140.

Thus, on appeal before this court, Khalaf needed to allege with specificity the witnesses and evidence his counsel should have investigated. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). We conclude that Khalaf has not presented either of these two claims with sufficient specificity to prevent a procedural bar.

### (c) Failure to Advise of Right to Testify

The final claim from the statement of errors alleges that Khalaf's trial counsel rendered ineffective assistance for failing to advise him of his right to testify. The record shows that after the State presented its case in chief, the county court informed Khalaf of his right to testify and his right to remain silent. The court asked Khalaf "Have you had enough time to speak with [your counsel] about your -- both your right to testify and your right not to testify?" and Khalaf indicated that he did. The court then asked "Do you feel like you understand each of those rights?" and Khalaf responded "Yes, Your Honor."

We conclude that the record refutes any claim that Khalaf's trial counsel failed to advise him of his right to testify and that he is entitled to no relief on this claim of ineffective assistance of counsel. We further conclude that Khalaf cannot demonstrate that he was prejudiced by his first appellate counsel's failure to timely present this issue to the district court.

### VI. CONCLUSION

We conclude that the district court did not err in failing to find plain error and in affirming Khalaf's conviction and sentence. We further conclude that Khalaf's claim that his counsel on appeal to the district court was ineffective fails. Accordingly, the order of the district court is affirmed.

AFFIRMED.