Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/21/2018 09:10 AM CDT

State of Nebraska, appellee, v.
Kenneth W. Blair, appellant.
___ N.W.2d ___

Filed June 29, 2018.    No. S-17-436.

1. **Criminal Law: Rules of Evidence: Pretrial Procedure: Appeal and Error.** The decision whether to reveal the identity of a confidential informant is controlled by Neb. Rev. Stat. § 27-510 (Reissue 2016), and judicial discretion is involved only to the extent § 27-510 makes discretion a factor in determining that question. Where § 27-510 commits a question at issue to the discretion of the trial court, an appellate court reviews the trial court's determination for an abuse of discretion.
2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.
3. **Trial: Evidence.** Whether there is sufficient foundation evidence for the admission of physical evidence must necessarily be determined by the trial court on a case-by-case basis.
4. **Trial: Evidence: Appeal and Error.** A trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for an abuse of discretion.
5. **Criminal Law: Rules of Evidence: Pretrial Procedure: Testimony: Appeal and Error.** A ruling made under the initial step of Neb. Rev. Stat. § 27-510(3)(b) (Reissue 2016), regarding whether an informer may be able to give testimony necessary to a fair determination, requires a court to use its judgment and thus exercise its discretion. An appellate court therefore reviews such a ruling for an abuse of discretion.

Appeal from the District Court for Douglas County: W. Russell Bowie III, Judge. Affirmed.

Matthew R. Kahler and Beau G. Finley, of Finley & Kahler Law Firm, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Schreiner, District Judge.

Miller-Lerman, J.

## NATURE OF CASE

Kenneth W. Blair appeals his conviction and sentence in the district court for Douglas County for possession of a deadly weapon by a prohibited person. Blair claims on appeal that the district court erred when it overruled his motion to reveal the identity of a confidential informant and when it admitted a gun into evidence over his objection. We affirm Blair's conviction and sentence.

## STATEMENT OF FACTS

The State filed an information against Blair in which it alleged three counts: possession of a deadly weapon by a prohibited person; possession of a stolen firearm; and manufacturing, distributing, or possessing with intent to distribute a controlled substance, cocaine. The charges against Blair were based on evidence obtained from the execution of a search warrant for Blair's house and for his person. After it found probable cause based on the sworn affidavit and application of Officer Lisa Villwok of the Omaha Police Department, the Douglas County Court issued the search warrant on August 16, 2015. The warrant authorized police to search for and seize items including, inter alia, cocaine and related paraphernalia and records and any firearms and companion equipment relating to such firearms. The affidavit indicated that Villwok obtained much of the information supporting her application from a confidential informant. The search warrant was executed on August 22.

Prior to trial, Blair filed a motion to suppress evidence obtained from the search. He asserted that Villwok's affidavit did not establish probable cause, because it was "based solely

on statements made by an unnamed confidential informant, with insufficient information regarding his or her reliability, and a complete lack of independent evidence corroborating the statements made by said confidential informant." Blair also filed a motion to reveal the identity of the confidential informant. He asserted that the confidential informant had "provided information to the State and was an actual participant or eye witness to the alleged offenses with which [Blair] is charged in that the confidential informant set up the alleged transaction for which [Blair] has been charged." Blair further asserted that knowledge of the identity of the confidential informant was "necessary to the preparation of the defense herein" and that without such knowledge, he was "unable to adequately prepare a defense of this case and address any informant who apparently has personal knowledge of the events which are the subject of the Information."

The court held a hearing on the two motions on June 14, 2016. Blair asked the court to take up the two motions together, because the matters were intertwined and because Villwok was the sole witness as to both matters. Shortly before the hearing started, on the State's motion, the court dismissed without prejudice the charge of manufacturing, distributing, or possessing with intent to distribute a controlled substance, cocaine. This left two charges for trial: (1) possession of a deadly weapon by a prohibited person and (2) possession of a stolen firearm.

Villwok testified as follows at the hearing on the two motions. Villwok had been a police officer for over 12 years and had been assigned to the "[g]ang unit" for over 5 years. In that assignment, she commonly used confidential informants who provided information regarding investigations involving gangs, narcotics, and gun-related matters. She would attempt to verify the accuracy of information provided by confidential informants before using the information to obtain search warrants. In August 2015, a confidential informant with whom she had previous experience provided Villwok

information regarding Blair. Villwok knew the confidential informant to have provided accurate information, including information that in the past had led to arrests and the seizure of illegal narcotics. The confidential informant told Villwok that Blair was selling cocaine out of his residence; the confidential informant had been inside Blair's residence and had observed Blair using a digital scale to measure cocaine, then packaging the cocaine in a plastic baggie and selling it to an individual in exchange for money. The confidential informant gave Villwok a physical description of Blair and told Villwok where Blair lived.

Villwok followed up on the physical description by searching a law enforcement database for information regarding Blair and determining that the physical description of Blair in the database was similar to the description given by the confidential informant. Villwok printed a photograph of Blair from the database and showed the photograph to the confidential informant, who identified Blair as the person he had observed selling cocaine. Villwok also had the confidential informant direct her to the area where Blair lived and point out the house in which Blair lived. Villwok determined the address for the house, and by referencing the county assessor's website, she learned that Blair was listed as the owner of the house. Villwok also verified that two local utility companies listed Blair as the person responsible for services at the house. Villwok checked Blair's criminal history and learned that he had been arrested for various offenses, including, inter alia, possessing different types of narcotics, including cocaine, and being a prohibited person in possession of a gun.

Villwok included the information she obtained from the confidential informant in an affidavit that she used to apply to the county court for a search warrant for Blair's house and his person. The county court issued the search warrant based on Villwok's affidavit. Villwok and other officers executed the search warrant on August 22, 2015. The confidential informant did not accompany Villwok and was not present at Blair's

house during the execution of the search warrant. Villwok found Blair in a bedroom of the house. During the search, another police officer found a Smith & Wesson 9-mm handgun located under a pillow at the head of the bed in the bedroom in which Blair was found. There was no one other than Blair in the room when police officers arrived.

Based on the gun and other evidence found in the search, Blair was placed under arrest, and Villwok interviewed him at the house. In the interview, Blair "took no claim to the residence" and "denied any knowledge of the gun or of the narcotics located inside of the residence as well as the paraphernalia and the other items."

Villwok continued to use information from the confidential informant after the search in this case. Villwok testified that the confidential informant had not been charged with a crime and did not have any pending criminal case at the time the informant provided the information regarding Blair but that the confidential informant was paid money for information the informant provided that resulted in an arrest. Villwok testified that the confidential informant had not been promised that he or she would not have to testify in this case but that the confidential informant and Villwok both had concerns for the informant's safety because of possible retaliation if the role as a confidential informant were exposed.

On cross-examination, Villwok testified that between August 16, 2015, when the search warrant was issued, and August 22, when it was executed, she had conducted surveillance of Blair's house, but that she did not attempt to make a controlled purchase from Blair. Villwok also testified that she obtained and executed another search warrant for Blair's house in February 2016. The information to support the second search warrant was provided by the same confidential informant as in this case. During the investigation related to cocaine found in the house in the second search, another resident of the house admitted that the cocaine was his. The other resident was arrested for possession with intent to

distribute cocaine. Blair was also arrested after the second search but was charged with only possession with intent to deliver marijuana.

Villwok further testified on cross-examination that prior to the search in August 2015, the confidential informant had told her that "Blair may be in possession of a long gun." However, the gun that was found in the August 2015 search was a handgun, and Villwok testified that no "long gun" was found in the search. In the affidavit that was submitted to obtain the search warrant in August, Villwok included that the confidential informant had stated that Blair "may be in possession of a long gun in his bedroom."

Other than his cross-examination of Villwok, Blair did not present evidence at the hearing on the motion to suppress and the motion to reveal the identity of the confidential informant. The court overruled the motion to suppress, because it concluded that there was sufficient probable cause to issue the search warrant and, alternatively, that the warrant was executed in good faith. The court also overruled the motion to reveal the identity of the confidential informant. The court noted that Neb. Rev. Stat. § 27-510 (Reissue 2016) generally provides for "a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer" but that under § 27-510(3)(b), subject to certain conditions, disclosure may be required "'[i]f it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case.'" The court noted that although the confidential informant was a witness to a drug transaction carried out by Blair, "Blair is no longer charged with a drug offense, but with a weapons offense." The court therefore found that "because [Blair] is not charged with a drug offense, the [confidential informant] cannot . . . give testimony which is material to the offense charged."

Blair thereafter waived his right to a jury trial on the two remaining charges. At the bench trial, the State's witnesses included Chris Brown, an Omaha Police Department officer assigned to the gang unit. Brown was part of the team that assisted Villwok in executing the search warrant for Blair's house on August 22, 2015. Brown was tasked with searching the bedroom in which Blair had been found. Brown testified that he "picked up the pillow that was on the bed and observed a black firearm." The State offered into evidence pictures that had been taken of the bed and the pillows. Brown testified that the pictures depicted how things appeared at the time of the search. He noted that some of the pictures showed the gun partially visible underneath the pillow, and he testified that the pictures depicted where the gun was when he found it. The State then showed Brown a gun that was marked as an exhibit. Brown testified that the exhibit was the gun that he found in the bedroom and that he was able to identify the gun because it was the same make and model and it had the same serial number. He testified that the gun appeared to be in generally the same condition as it was when he found it. The State offered the gun into evidence, and Blair objected to admission of the gun based on foundation.

Blair had previously objected on the same basis when Brown first testified that he had found the gun. On both occasions, Blair was allowed to voir dire Brown with regard to the gun. Blair's questioning after Brown's first mention of the gun was directed toward the return and inventory that was filed after the search warrant was executed. Brown testified that he personally did not prepare the return and inventory and that another officer on the team had done so. After Blair had Brown read the return and inventory, Brown testified that while other items he had found in the search of the bedroom were listed in the document, the gun was not listed. The court sustained the State's objection to Blair's line of questioning based on relevance. Blair suspended his voir dire at that time

but continued it after he objected to the State's offer of the gun into evidence. Blair began to question Brown about an alleged discrepancy between the item number on the gun and the list of items in the return and inventory. After the court sustained the State's objection to the line of questioning, Blair concluded the voir dire. He then argued to the court that the State did not establish foundation for admission of the gun into evidence. He generally argued that because the gun was not listed on the return and inventory, the State had not established a chain of custody for the gun, and that therefore, it was not admissible.

After hearing argument from both Blair and the State, the court overruled Blair's objection and admitted the gun into evidence. The court reasoned that Brown had testified that the gun being offered into evidence was the same make and model and had the same serial number as the gun he found in the bedroom.

Brown's testimony continued after the gun was admitted into evidence. Brown testified that after he saw the gun, he placed the pillow back where he had found it and "immediately contacted the crime lab unit to come retrieve" the gun. He stated that this was standard practice for collecting a gun. Brown did not touch the gun himself, but he remained in the bedroom and continued searching for other items. He found various items, including letters addressed to Blair and other items connected to Blair. He also found two 9-mm gun magazines. Brown testified that the gun he had found was a Smith & Wesson 9-mm handgun. Brown packaged these other items and provided them to the officer who was preparing the inventory. Brown was still in the bedroom when a forensic technician from the crime laboratory arrived to collect the gun. Brown was present as she photographed the gun and the room.

Kimberly Van den Akker, whom Brown identified as the forensic technician who collected the gun, also testified at trial. Van den Akker was directed to the bedroom when she arrived at Blair's house. She took photographs of the bedroom

as it appeared when she entered the room. She had been told that the gun was under a pillow, so she moved the pillow to reveal the gun, and she then took additional pictures of the gun in the location where it was found. Van den Akker was shown the gun that had been admitted into evidence during Brown's testimony, and she identified it as the gun she saw in the bedroom. After photographing the gun, she put on fresh gloves, removed the gun from under the pillow, and placed the gun onto a clean paper bag. She unloaded the gun and took another picture of it. She then placed the gun into another clean paper bag and placed the magazine and round that she had unloaded from the gun into a separate envelope. She then transported the items to the crime laboratory. Van den Akker testified that from the point she arrived in the bedroom until she returned to the crime laboratory, she was the only person who had possession of or touched the gun. At the crime laboratory, the items were placed into a secured locker. Van den Akker was the sole technician who did further processing on the gun. Such processing included swabbing the surface of the gun for possible DNA. She packaged the swab, sealed and labeled the package, and turned it over to the evidence property unit.

At the end of its case, the State presented certain testimony to which Blair had stipulated. The State asserted that the gun that had been entered into evidence had been test fired by a forensic technician and that the technician would testify that it was "a weapon which is designed to expel any projectile by the action of an explosive or frame or receiver of such weapon." The State further asserted that a crime laboratory technician had collected a buccal swab from Blair and that the buccal swab and the swab Van den Akker had taken from the gun were submitted for DNA testing. The State offered into evidence the DNA report containing the results of a comparison of the two swabs. The report stated that Blair was not excluded as a partial profile contributor to the DNA tested. The court allowed the DNA report into evidence over Blair's objection. Blair

stated that his objection to the DNA report, which was also his general objection to the stipulated testimony presented by the State, was "just [his] foundational objection again . . . to the underlying firearm." The court also allowed, without objection by Blair, evidence that Blair had a prior felony conviction from 1999.

The State rested its case, and Blair moved to dismiss both counts. After Blair and the State argued the motion to dismiss, Blair rested his defense without providing evidence. The parties made closing arguments, and the court stated that it would announce its verdict at a later date. At that later date, the court found Blair guilty of possession of a deadly weapon by a prohibited person, but it found him not guilty of possession of a stolen firearm. The court later sentenced Blair to imprisonment for a mandatory minimum of 3 years and a maximum of 6 years.

Blair appeals his conviction and sentence.

## ASSIGNMENTS OF ERROR

Blair claims that the district court erred (1) when it overruled his motion to reveal the identity of the confidential informant and (2) when it admitted the gun into evidence over his objection.

## STANDARDS OF REVIEW

In *State v. Wenzel*, 196 Neb. 255, 260, 242 N.W.2d 120, 123 (1976), we stated that "[t]he disclosure of the name of the [confidential] informant was within the discretion of the trial judge." In *Wenzel*, we relied mainly on federal case law to set forth standards relating to the decision whether the identity of a confidential informant should be disclosed, and we did not cite to § 27-510, which was enacted in 1975 and did not govern the trial court's decision in *Wenzel*.

The decision whether to reveal the identity of a confidential informant is now governed by § 27-510, which is part of the rules of evidence and creates a privilege for the State to refuse

to disclose the identity of a confidential informant. The standard we generally apply on appeal when reviewing decisions regarding issues of admissibility under the rules of evidence is as follows: In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018).

[1] The language of § 27-510 guides and sets the parameters for a court's decisions regarding whether the identity of an informer should be disclosed; certain determinations within § 27-510 are based on judicial discretion. Applying these standards to § 27-510, we hold: The decision whether to reveal the identity of a confidential informant is controlled by § 27-510, and judicial discretion is involved only to the extent § 27-510 makes discretion a factor in determining that question. Where § 27-510 commits a question at issue to the discretion of the trial court, an appellate court reviews the trial court's determination for an abuse of discretion.

[2] To the extent appellate review of a trial court's decision whether to reveal the identity of a confidential informant involves interpretation of § 27-510, statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination. *State v. Kennedy*, 299 Neb. 362, 908 N.W.2d 69 (2018).

[3,4] Whether there is sufficient foundation evidence for the admission of physical evidence must necessarily be determined by the trial court on a case-by-case basis. *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016). A trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for an abuse of discretion. *Id*.

## ANALYSIS

*District Court Did Not Err When It*
*Overruled Blair's Motion to Reveal*
*Identity of Confidential Informant.*

Blair claims that the district court erred when it overruled his motion to reveal the identity of the confidential informant. As we explained above, the court in its discretion overruled the motion based on its determination under § 27-510(3)(b) that the confidential informant did not have necessary testimony to offer regarding the issue of Blair's guilt or innocence in connection with the charges still pending against him. We determine that the court did not abuse its discretion when it overruled the motion to reveal the informer's identity on this basis.

As noted above, taken as a whole, § 27-510 creates a privilege for the State to refuse to disclose the identity of a confidential informant, as well as circumstances where the privilege must yield to other considerations.

Section 27-510(1) describes the privilege as follows:

> The government or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

Subsection (2) of § 27-510 indicates who may claim the privilege.

Subsection (3) indicates certain circumstances in which the privilege is limited or must give way to other concerns. Subsection (3)(a) indicates that no privilege exists if the confidential informant appears as a witness or if the confidential informant's identity has already been disclosed by either the confidential informant or the holder of the privilege to "those who would have cause to resent the communication." Subsection (3)(b) provides procedures to address situations including, inter alia, where the confidential informant "may

be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case." Subsection (3)(c) provides procedures to address the situation in which "information from [a confidential informant] is relied upon to establish the legality of the means by which evidence was obtained" and the judge has reason to believe the informant's information may not have been reliable or credible.

In the present case, there was no indication that the State planned to call the confidential informant as a witness and no indication that the identity of the confidential informant had been disclosed by the State or by the confidential informant. Therefore, subsection (3)(a) was not at issue. Also, Blair indicated at the hearing in this case that he was not specifically challenging the reliability or credibility of the confidential informant's information for purposes of his motion to suppress. Therefore, subsection (3)(c) was not at issue.

Instead, Blair contends that the limitations on the privilege found in subsection (3)(b) of § 27-510 were applicable. Section 27-510(3)(b) provides, in relevant part:

> If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case . . . and the government invokes the privilege, the judge shall give the government an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing may be in the form of affidavits or testimony, as the judge directs. If the judge finds that there is a reasonable probability that the informer can give the testimony, and the government elects not to disclose his [or her] identity, the judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the judge may do so on his [or her] own motion.

Therefore, when the defendant in a criminal case moves for disclosure of the identity of a confidential informant,

§ 27-510(3)(b) sets up a series of steps to determine whether the identity may be disclosed or whether the State's privilege should be honored.

As the first step under § 27-510(3)(b), the judge must determine whether it appears that the confidential informant may be able to give testimony necessary to a fair determination of the issue of guilt or innocence of the pending charges. If the testimony is not necessary, then the judge need proceed no further under § 27-510(3)(b) and may overrule the defendant's motion on the basis that the identity of the confidential informant is not relevant to the charges against the defendant.

If, however, it does appear that the confidential informant may be able to give such testimony, then the government must decide whether to invoke the privilege afforded it under § 27-510(1). If the government decides not to invoke the privilege, then the court may order disclosure.

If, however, the government invokes the privilege, then the judge must hold an in camera hearing to allow the government an opportunity to present facts relevant to show whether the confidential informant can in fact supply testimony necessary to a fair determination of the issue of guilt or innocence. If, based on the in camera hearing, the judge finds that there is not a reasonable probability that the informer can give the testimony, then the court may overrule the defendant's motion to disclose the identity of the confidential informant.

If, however, the judge finds that there is a reasonable probability that the informer can give testimony that is necessary, then the government may elect to waive the privilege and disclose the identity of the confidential informant. If the government does not so elect, then the defendant may move to dismiss the charges to which the testimony would relate or the court may dismiss the charges on its own motion.

This understanding of the framework of how § 27-510(3)(b) operates factors into our review of the court's ruling in which it denied Blair's motion to reveal the identity of the confidential informant. In addition to arguing that the court erred in

determining as a substantive matter that it did not appear that the confidential informant could give testimony relevant to the charges against him, Blair also makes two procedural arguments regarding the district court's alleged error in overruling his motion. First, he contends that the judge erred by failing to hold the in camera hearing identified in § 27-510(3)(b). Second, he contends that it was improper for the State to dismiss the drug charge in order to avoid disclosing the identity of the confidential informant. We find no merit to either of these procedural contentions.

As to the first procedural argument, we note that the court made the initial determination that it did not appear that the confidential informant "may be able to give" testimony necessary to a fair determination of the issue of guilt or innocence with respect to the charges that were still pending in this case—possession of a deadly weapon by a prohibited person and possession of a stolen firearm. Because the court made this initial determination, it did not need to go further than this first step under § 27-510(3)(b). An in camera hearing would have been required only if the court had found that it appeared the confidential informant "may be able to give" testimony regarding Blair's guilt or innocence and the State had thereafter invoked its privilege. Thus, Blair's assertion that an in camera hearing was required is without merit.

As to the second procedural argument, we do not find it improper that the State dismissed the drug charge before the court could order it to disclose the identity of the confidential informant. As we read the progression laid out in § 27-510(3)(b), the State's actions in this case were anticipated by the statute. When there is a reasonable probability that the confidential informant can give testimony necessary to a fair determination of the issue of guilt or innocence on a specific charge, then the State has the option to either waive its privilege and disclose the identity of its confidential informant or invoke the privilege and, thus as a practical matter, face the possibility of dismissal of the charges by

the court on its own motion or on the motion of the defendant. The ultimate relief that was available to Blair under § 27-510(3)(b) was dismissal of the charge to which the confidential informant's testimony would be necessary. By the State's dismissal of that charge, Blair obtained that relief, and we do not find it improper for the State to have made the choice to maintain confidentiality of the informer and to dismiss the drug-related charge.

[5] Finally, we find no error in the court's conclusion that it did not appear that the confidential informant in this case may be able to give testimony necessary to a fair determination of the issue of guilt or innocence on the charges still pending against Blair. This ruling was made under the initial step of § 27-510(3)(b), which requires the court to use its judgment and thus exercise its discretion. We therefore review the ruling for an abuse of discretion.

At the time the court considered Blair's motion, the charges remaining against Blair were for possession of a deadly weapon by a prohibited person and possession of a stolen firearm. The evidence relevant to those charges related to whether Blair was in possession of the gun found on the day of the search, whether he was a prohibited person on that day, whether the gun was stolen, and whether Blair knew the gun was stolen. There was no indication that the confidential informant had information relevant to any pending issue other than whether Blair had previously been in possession of a weapon. But even regarding possession, there was no indication that the confidential informant was present during the execution of the search warrant and therefore no indication he could provide information relevant to whether Blair was in possession of the gun on the day of the search. There was evidence that the confidential informant had previously observed Blair to be in possession of a "long gun" on an earlier date; however, such evidence was not relevant to and likely would not have been allowed in connection with the charges in this case stemming from possession of a handgun.

The court was correct in its assessment that although testimony of the confidential informant may have been necessary to a drug-related charge on the issue of intent, it would not be necessary to the charges that remained after dismissal of the drug-related charge. We determine that the district court did not abuse its discretion when it ruled that it did not appear that the confidential informant in this case may be able to give testimony necessary to a fair determination of the issue of guilt or innocence on the charges pending against Blair and when it therefore overruled Blair's motion to reveal the identity of the confidential informant.

*District Court Did Not Abuse Its*
*Discretion When It Allowed*
*Gun Into Evidence.*

Blair also claims that the court erred when it admitted the gun into evidence over his objection. We conclude that the district court did not abuse its discretion when it determined that there was adequate foundation to allow the gun into evidence.

Whether there is sufficient foundation evidence for the admission of physical evidence must necessarily be determined by the trial court on a case-by-case basis. *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016). A trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for an abuse of discretion. *Id.*

In this case, the gun was offered into evidence in connection with the testimony of Brown, who had found the gun during the search of the bedroom. Before offering the gun into evidence, the State showed the gun to Brown. Brown testified that it was the gun that he found in the bedroom and that he was able to identify the gun because it was the same make and model and, notably, it had the same serial number as the gun he had found. Brown further testified that the gun appeared to be in generally the same condition as it was when he found it. This testimony by Brown was sufficient to provide foundation for admission of the gun into evidence.

Blair's objection at trial and his argument on appeal focus on a chain of custody and the alleged failure of law enforcement personnel to include the gun on the return and inventory that was prepared and filed after the search warrant was executed. It is generally understood that a "chain of custody for physical evidence may have to be established as part of the foundation for its admission as in cases where physical evidence is not readily identifiable or may be susceptible to tampering, contamination, or exchange." 23 C.J.S. *Criminal Procedure and Rights of Accused* § 1150 at 598 (2016). However, a chain of custody is not logically necessary to establish the foundation of an item of physical evidence bearing a serial number or other unique identifier.

Rather than going to admissibility, we believe Blair's argument goes to the weight to be accorded to the evidence. We have previously discussed this issue in *State v. Bradley*, 236 Neb. 371, 461 N.W.2d 524 (1990). In *Bradley*, we concluded that where a witness at trial identified a gun offered into evidence as being the one he had retrieved from the defendant's home, there was sufficient foundation to admit the gun into evidence and the defendant's assertions regarding defects in the chain of custody went merely to the weight to be given to the evidence rather than to admissibility of the evidence.

We further note for completeness that in his "chain of custody" argument, Blair does not appear to assert that the gun may have been tampered with or altered. Instead, his argument regarding the failure to include the gun on the return and inventory relates more to whether law enforcement officers followed proper procedure in conducting the search. But Blair's objection at trial and his assignment of error on appeal do not challenge the search or the court's having overruled his motion to suppress evidence obtained in the search.

Brown's testimony in this case provided sufficient foundation, because the gun was readily identifiable to him based on its make, model, and serial number. In addition, Brown was able to address concerns regarding tampering by testifying that

the gun was in generally the same condition as when he found it. We conclude that the district court did not abuse its discretion when it admitted the gun into evidence.

## CONCLUSION

We conclude that the district court did not err when it overruled Blair's motion to reveal the identity of the confidential informant or when it admitted the gun into evidence. We therefore affirm Blair's conviction and sentence for possession of a deadly weapon by a prohibited person.

Affirmed.