IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. CAPORALE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

STEVEN M. CAPORALE, APPELLANT.

Filed October 13, 2020.    No. A-20-046.

Appeal from the District Court for Gage County: JULIE D. SMITH, Judge. Affirmed.

Jerry L. Shelton for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Following a jury trial, Steven M. Caporale was convicted of distribution of a controlled substance (methamphetamine). The district court for Gage County subsequently imposed a sentence of imprisonment. Caporale appeals his conviction and sentence. For the reasons that follow, we affirm.

### BACKGROUND

*Procedural Background.*

On January 9, 2019, the State filed a complaint alleging that Caporale distributed methamphetamine within 1,000 feet of a school zone in violation of Neb. Rev. Stat. § 28-416(4)(a)(ii) (Reissue 2016), a Class ID felony punishable by a minimum of 3 years' and a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Reissue 2016). The charge in this

case arose from a "controlled buy" in which investigators used a confidential informant to purchase methamphetamine from Caporale in Wymore, Nebraska, on May 19, 2016.

The State had originally charged Caporale on March 2, 2017, and a jury trial was scheduled for May 23, 2018. On May 21, the State moved to endorse an additional witness. Caporale objected, and the district court denied the State's motion. Subsequently, the State filed a motion to dismiss, and the district court dismissed the case without prejudice.

After the State refiled charges against Caporale in the present case, a preliminary hearing was held on February 7, 2019. Investigator Nathan Jacobsen of the Nebraska State Patrol testified about the circumstances surrounding the controlled buy. Based on this testimony, the county court found there was probable cause to believe Caporale had committed the offense charged, and it bound the case over to district court. The State filed an information in district court charging the same offense alleged in the complaint.

On February 19, 2019, Caporale filed a plea in abatement. Caporale alleged that "the State's evidence of identification of [Caporale] at the scene of the alleged offense was insufficient to establish probable cause and further that the evidence presented by the State of chain of custody of alleged contraband was further lacking and insufficient to establish probable cause." Following a hearing, the district court entered an order denying Caporale's plea in abatement.

On July 31, 2019, Caporale filed several pretrial motions. As relevant to this appeal, Caporale filed: a motion in limine to prohibit the State from offering audio recordings of the controlled buy; a motion in limine to prohibit the State from offering the methamphetamine obtained by the confidential informant from Caporale; a motion to suppress Jacobsen's identification of Caporale; and a motion to dismiss the case on due process grounds. Following a hearing and argument by the parties, the district court denied Caporale's motion to dismiss, his motion in limine concerning the methamphetamine, and his motion to suppress. The court granted in part and denied in part Caporale's motion in limine relating to the audio recordings of the controlled buy.

Trial began on September 11, 2019. At trial, Caporale objected to the admission of the audio recordings of the controlled buy, to Jacobsen's in-court identification of him, and to admission of the methamphetamine purchased by the confidential informant from Caporale. Caporale further objected to the admission of a Nebraska certificate of title for a red Ford Mustang that was owned by Caporale and driven by him during the controlled buy. The district court overruled all four objections.

At the conclusion of the State's presentation of evidence, Caporale moved to dismiss on the grounds that the State had failed to introduce any evidence showing he was at least 18 years old at the time of the offense, a required element under § 28-416(4)(a)(ii). The district court found that the State had not met its burden of proof regarding Caporale's age, but elected to instruct the jury on the lesser-included offense of distribution of methamphetamine under § 28-416(2)(a) rather than dismiss the case. Caporale did not object.

During the jury instruction conference, Caporale requested that the court instruct the jury on eyewitness identification testimony and offered a proposed instruction. The court sustained the State's objection on the grounds that the instruction "had no basis in Nebraska law." The district court did give a general credibility instruction.

*Evidence Presented at Trial.*

At trial, Jacobsen testified that he had been employed with the Nebraska State Patrol for 24 years and that at the time of the events in this case, he was a narcotics investigator. Prior to May 19, 2016, Jacobsen spoke with a confidential informant who told him that the informant could conduct a controlled buy of methamphetamine from Caporale. Jacobsen testified he was not familiar with Caporale, but was aware that he drove a maroon or red Ford Mustang convertible. While preparing for the controlled buy, Jacobsen confirmed Caporale had a red Ford Mustang registered in his name. Jacobsen also viewed an enlarged color photograph of Caporale from the Nebraska Department of Motor Vehicles database.

At approximately 1 p.m. on May 19, 2016, Jacobsen met with several other investigators to discuss their roles in the controlled buy operation, which was to take place at Caporale's residence. Investigators Todd Wiley and David Hanselmann were assigned to take photographs and record the controlled buy via audio. Wiley and Hanselmann subsequently traveled to Caporale's residence, where they observed a red Ford Mustang convertible parked outside.

Jacobsen testified that he traveled with two other investigators to meet with the confidential informant. Jacobsen searched the informant to ensure he did not have any illegal narcotics concealed on his person. This search included bodily cavities and orifices, socks, and shoes. After the search was complete, Jacobsen equipped the informant with recording and transmitting devices. Jacobsen activated the devices so that investigators could monitor the controlled buy as it occurred. He also gave the informant $300 to purchase methamphetamine from Caporale.

Jacobsen testified that shortly after the recording devices were activated, Caporale called the informant. Jacobsen did not recognize the caller's voice at that time, but he testified he had become familiar with Caporale's voice since that day. During the phone call, Caporale told the informant to meet him at Casey's gas station in Wymore. The recorded phone conversation was received into evidence and played for the jury. Jacobsen informed Wiley and Hanselmann of the change in location, and they set up surveillance in the park across the street from the gas station.

Jacobsen and the informant drove to the meeting location and parked near the front of the store. Jacobsen testified that he observed a maroon or red Ford Mustang convertible parked a few stalls away from Jacobsen's vehicle. He testified that he recognized the Mustang as Caporale's and that he identified the driver of the Mustang as Caporale.

The confidential informant exited the car and spoke briefly with an acquaintance near the front door of the gas station. Jacobsen testified that the informant then walked to Caporale's vehicle and sat in the passenger side seat. Jacobsen saw the Mustang back out of the parking stall and drive around the block before returning to park at the gas pumps. After a brief conversation, the informant got out of the Mustang and immediately returned to Jacobsen's vehicle. Jacobsen testified that no one besides Caporale and the informant were inside Caporale's vehicle at any point.

After the confidential informant returned to Jacobsen's vehicle, he handed Jacobsen a cigarette box. Jacobsen testified that inside the box was a white baggy with a crystalline substance that he recognized from his training to be methamphetamine. Jacobsen then transported the informant to a different location where he searched the informant again and recovered the

recording and transmitting equipment. Jacobsen did not find any contraband on the informant's person, nor did he find any of the $300 of buy money. The State offered the audio recording of the controlled buy during trial and played it for the jury.

Jacobsen testified that after the controlled buy, he sent the white crystalline substance to the Nebraska State Patrol Crime Lab. The substance was positively identified as methamphetamine by a forensic drug analyst.

Wiley testified that he observed the controlled buy from a park across the street from the gas station. He took several photographs of Caporale's red Ford Mustang before and during the buy. The photos showed no one besides Caporale and the informant were inside Caporale's vehicle at any point. Hanselmann testified that he also observed the controlled buy from across the street. He recorded the buy via a hand-held camera. This video was received into evidence at trial. The video showed the confidential informant entering Caporale's red Ford Mustang and driving around the block with Caporale before exiting and returning to Jacobsen's vehicle.

Caporale did not offer any evidence in his defense. After Caporale's motion to dismiss, the court acquitted him of distribution of a controlled substance within 1,000 feet of a school zone and instructed the jury on the lesser-included offense of distribution of a controlled substance. After deliberation, the jury found Caporale guilty of distribution of methamphetamine. A presentence investigation was ordered by the district court. On December 20, 2019, the district court sentenced Caporale to a term of 4 to 10 years' imprisonment. He was given 4 days of credit for time served. This appeal followed.

## ASSIGNMENTS OF ERROR

Caporale assigns, restated and consolidated, that the district court erred as follows: (1) in overruling his plea in abatement; (2) in overruling his motions in limine; (3) in overruling his motion to suppress and objections to identification testimony; (4) in overruling his pretrial motion to dismiss on due process grounds; (5) in overruling his objection to Jacobsen sitting at counsel table; (6) in overruling his objection to the admissibility of the methamphetamine; (7) in overruling his objection to the admissibility of the audio recordings; (8) in overruling his objection to the admissibility of the certificate of title for his vehicle; (9) in overruling his motion to dismiss upon the State's failure of proof; (10) in failing to give his requested jury instruction about eyewitness identification evidence. He further alleges: (11) there was insufficient evidence to support his conviction and (12) the district court imposed an excessive sentence.

## STANDARD OF REVIEW

A district court's conclusion whether an identification is consistent with due process is reviewed de novo, but the court's findings of historical fact are viewed for clear error. *State v. Pope*, 305 Neb. 912, 943 N.W.2d 294 (2020).

A trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for an abuse of discretion. *State v. Blair*, 300 Neb. 372, 914 N.W.2d 428 (2018).

Because authentication rulings are necessarily fact specific, a trial court has discretion to determine whether evidence has been properly authenticated. *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016).

Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection. *State v. Martinez*, 306 Neb. 516, 946 N.W.2d 445 (2020).

Trial courts have broad discretion with respect to sanctions involving discovery procedures, and their rulings thereon will not be reversed in the absence of an abuse of discretion. *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020).

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Mann*, 302 Neb. 804, 925 N.W.2d 324 (2019).

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

ANALYSIS

*Plea in Abatement.*

Caporale asserts that the district court erred when it overruled his plea in abatement, because the State did not present any evidence of his age at the preliminary hearing. He argues that age is an essential element of the crime of distributing a controlled substance within 1,000 feet of a school zone under § 28-416(4). The State correctly observes that the argument presented on appeal is different than that originally made before the district court.

Appellate courts do not generally consider arguments and theories raised for the first time on appeal. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015). When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012). An issue not presented to or decided on by the trial court is not an appropriate issue for consideration on appeal. *Id.*

Here, Caporale raises a different argument on appeal regarding the lack of probable cause shown by the State at the preliminary hearing. In his original plea in abatement, he alleged errors regarding improper eyewitness identification evidence and lack of chain of custody of the seized methamphetamine. Caporale's plea in abatement made no reference to a lack of evidence of his

age at the time of the offense. Accordingly, we find that Caporale did not properly preserve the issue of the State's failure to present evidence of his age at the preliminary hearing.

Additionally, even assuming the district court erred in denying Caporale's plea in abatement, Caporale cannot show he was prejudiced. Any error in ruling on a plea in abatement is cured by a subsequent finding at trial of guilt beyond a reasonable doubt which is supported by sufficient evidence. *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014). Consistent with this well-established rule, any error in ruling on a plea in abatement is cured by a subsequent acquittal at trial. The court in this case cured any error by finding at trial that the State had not presented evidence of Caporale's age during its case-in-chief and acquitting Caporale of the charge of distribution within 1,000 feet of a school zone. Caporale was ultimately convicted of a lesser-included offense, and he does not argue on appeal that there was no probable cause at the preliminary hearing to believe Caporale committed the offense of distribution of methamphetamine.

We conclude that the district court did not err when it overruled Caporale's plea in abatement.

*Motions in Limine.*

Caporale assigns that the district court erred when it overruled two of his motions in limine concerning the admissibility of evidence obtained by law enforcement during the controlled buy. Specifically, he assigns error to the court's decision to overrule his motion to exclude the State's audio recording of the controlled buy and to exclude the seized methamphetamine due to improper chain of custody.

An appellant who has assigned only that the trial court erred in denying a motion in limine has not triggered appellate review of the evidentiary ruling at trial. *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020). It has repeatedly been held that a motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. *Id.* It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. *Id.* Therefore, when a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court. *Id.*

Here, Caporale did object at trial when evidence of the audio recordings and when the contraband evidence was received at trial. Further, he assigns and argues these issues on appeal, and we address those arguments elsewhere in this opinion. However, because this particular assignment of error challenges only the district court's ruling on Caporale's motions in limine, it presents nothing for appellate review.

*Identification Testimony.*

Caporale argues that the district court erred in overruling his motion to suppress Jacobsen's identification of Caporale and in allowing Jacobsen to testify at trial regarding that identification. He argues that the fact Jacobsen had limited familiarity with Caporale's appearance prior to the controlled buy calls into question the reliability of the identification.

Generally, the due process clause places a check on the admission of eyewitness identification when the police have arranged suggestive circumstances leading the witness to

identify a particular person as the perpetrator of a crime. *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012) (discussing *Perry v. New Hampshire*, 565 U.S. 228, 132 S. Ct. 716, 181 L. Ed. 2d 694 (2012)). Suppression of identification evidence on the basis of undue suggestion is appropriate only where the witness' ability to make an accurate identification is outweighed by the corrupting effect of improper police conduct. *State v. Nolan, supra*. Absent undue suggestion by law enforcement, it is the jury, not the judge, who traditionally determines the reliability of evidence. *Id.*

In this case, Caporale does not allege that law enforcement engaged in improper conduct that would render Jacobsen's identification of Caporale unreliable. Instead, he argues that because Jacobsen had never met or seen Caporale prior to the controlled buy, the identification based on his driver's license photo should be considered "highly suspect." Brief for appellant at 28. However, suppression of Jacobsen's identification of Caporale would only be warranted if there existed evidence of improper police conduct. In the absence of such evidence, it was the jury's role to weigh the reliability of Jacobsen's testimony.

The district court did not err when it overruled Caporale's motion to suppress and overruled Caporale's objection to Jacobsen's identification testimony. This argument fails.

*Pretrial Motion to Dismiss.*

Caporale contends that the district court erred by denying his motion to dismiss this case on due process grounds. He argues that his due process rights were violated when the State dismissed its original case against Caporale 3 days prior to trial and then waited 8 months before filing charges again. He admits that this case was filed within the relevant statute of limitations.

The Nebraska Supreme Court has recognized that the due process clause requires dismissal if a defendant can show that a delay between the dismissal of a defendant's first indictment and reindictment caused actual prejudice to his or her defense and that it was a deliberate action by the State designed to gain a tactical advantage. *State v. Trammell*, 240 Neb. 724, 484 N.W.2d 263 (1992). However, Caporale does not argue that he was prejudiced by the State's delay in refiling charges, nor does he specifically allege that the State engaged in practices and policies that "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" or "transgresses any recognized principal of fundamental fairness in operation." *State v. Harris*, 296 Neb. 317, 339, 893 N.W.2d 440, 456 (2017).

Here, the reason for the State's initial dismissal is apparent from the record. After initially charging Caporale, the State chose to dismiss the charges because the district court denied its motion to endorse an additional witness three days before trial. Subsequently, and within the statute of limitations, the State re-filed charges against Caporale, and the witness testified at trial. This was not an improper action by the State designed to gain a tactical advantage.

We conclude the district court did not err in denying Caporale's pretrial motion to dismiss on due process grounds.

*Jacobsen's Presence at Counsel Table.*

Caporale next argues that the district court erred when it overruled his objection to having Jacobsen remain seated at counsel table with the prosecutors throughout trial. He argues that the

presence of Jacobsen "improperly gave the appearance of heightened credibility on the part of the officer . . . and was prejudicial" to Caporale's defense. Brief for appellant at 25.

Under Neb. Rev. Stat. § 27-615 (Reissue 2016), an order sequestering witnesses does not apply to an individual whom the State has designated as its representative. The Supreme Court has held that it is permissible for a law enforcement officer to be seated at counsel table throughout trial, even when the officer is called to testify and a sequestration order has been entered. *State v. Freeman*, 267 Neb. 737, 677 N.W.2d 164 (2004); *State v. Jackson*, 231 Neb. 207, 435 N.W.2d 893 (1989) (affirming trial court's decision to allow expert witness doctor designated as State's representative to remain in courtroom throughout trial despite sequestration order).

In this case, the district court did not err when it allowed Jacobsen to remain in the courtroom during trial. This argument fails.

*Admissibility of Methamphetamine.*

Caporale argues the district court erred by admitting the methamphetamine recovered by law enforcement during the controlled buy. Specifically, he alleges that the confidential informant's failure to testify created a "significant break in the chain of custody." Brief for appellant at 24.

Where objects pass through several hands before being produced in court, it is necessary to establish a complete chain of evidence, tracing the possession of the object or article to the final custodian; and if one link in the chain is missing, the object may not be introduced in evidence. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). Objects which relate to or explain the issues or form a part of a transaction are admissible in evidence only when duly identified and shown to be in substantially the same condition as at the time in issue. *Id.* It must be shown to the satisfaction of the trial court that no substantial change has taken place in an exhibit so as to render it misleading. *Id.* Important in determining the chain of custody are the nature of the evidence, the circumstances surrounding its preservation and custody, and the likelihood of intermeddlers tampering with the object. *Id.* Whether there is sufficient foundation to admit physical evidence is determined on a case-by-case basis. *Id.*

In *State v. Weathers, supra*, the Supreme Court held that testimony of a physician supervising the collection of evidence by a nurse was sufficient to establish chain of custody, even if the physician did not handle all of the steps in securing the evidence personally. *Id.*

Here, Jacobsen testified that prior to the controlled buy, he thoroughly searched the confidential informant and did not find any drugs. At all times during the buy, the confidential informant was in the company of Jacobsen or Caporale, or he was within investigators' direct line of sight. During periods where Caporale's vehicle was out of investigators' view, the audio recordings admitted at trial demonstrate that only Caporale and the informant were inside the car. The recordings are consistent with a sale of drugs. After the buy was completed, the informant handed the bag of methamphetamine directly to Jacobsen, and Jacobsen then searched the informant a second time. Wiley and Hanselmann also observed the confidential informant from their position across the street and did not witness any improper handling of the methamphetamine.

Caporale does not cite authority requiring that each specific person who physically touched a piece of evidence must testify, and we think testimony by three law enforcement officers who supervised the controlled buy was sufficient to provide that step in the chain of custody.

We conclude that the district court did not abuse its discretion when it determined that there was adequate foundation to allow the methamphetamine into evidence.

*Admissibility of Audio Recordings.*

Caporale claims the district court erred by admitting the audio recordings captured by the device worn by the confidential informant. He contests the admissibility of the recorded phone conversation and the recording of the controlled buy on two grounds: that there was insufficient authentication that Caporale was one of the people speaking in both recordings and that the informant's alleged statements on the recordings were hearsay and violated his right to confrontation. We conclude both arguments are without merit.

Under the Nebraska Rules of Evidence, the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence to support a finding that the matter in question is what its proponent claims. *State v. Savage*, 301 Neb. 873, 920 N.W.2d 692 (2018). This rule does not impose a high hurdle for authentication. *Id.* A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity. *Id.* Neb. Rev. Stat. § 27-901(2)(e) (Reissue 2016) provides that a voice may be authenticated "whether heard first-hand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."

Caporale argues that because Jacobsen only became familiar with the sound of Caporale's voice after the controlled buy on May 19, 2016, his authentication of the sound recordings at trial was ineffective. Jacobsen testified that he had become familiar with Caporale's voice through depositions and by "being around" Caporale in general. This is a sufficient basis to authenticate the recorded phone conversation and the recording from the confidential informant's body-worn device.

Although both recordings contained out-of-court statements by Caporale and the confidential informant, none of those statements constituted hearsay. Additionally, the admission of the statements did not violate the Confrontation Clause.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Neb. Rev. Stat. § 27-801(3) (Reissue 2016). Hearsay is not admissible except as provided by the rules of evidence. *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016). Pursuant to § 27-801(4)(b)(i), a statement is not hearsay if "[t]he statement is offered against a party and is . . . his or her own statement." See *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016). If an out-of-court statement is not offered for the purpose of proving the truth of the facts asserted, it is not hearsay. *State v. Grant, supra.*

Neither Caporale's nor the confidential informant's statements were hearsay. Because Caporale was a party to the case and his statements were offered against him, they fall outside the definition of hearsay. The confidential informant's statements were not offered to prove the truth

of the matter asserted. Rather, they were admissible only to provide context for Caporale's independently admissible statements.

Additionally, because the confidential informant's statements were not offered to prove the truth of the matter asserted, they do not implicate the Confrontation Clause. Statements not offered into evidence to prove the truth of the matter asserted do not violate a criminal defendant's confrontation rights. *Williams v. Illinois*, 567 U.S. 50, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012). "Statements providing context for other admissible statements are not hearsay because they are not offered for their truth. As a result, the admission of such context evidence does not offend the Confrontation Clause because the declarant is not a witness against the accused." *U.S. v. Spencer*, 592 F.3d 866, 879 (8th Cir. 2010) (quoting *U.S. v. Tolliver*, 454 F.3d 660 (7th Cir. 2006)).

We therefore conclude that there was sufficient foundation to admit the audio recordings, that statements on the recordings were not inadmissible hearsay, and that Caporale's rights under the Confrontation Clause were not violated. This argument fails.

*Admissibility of Certificate of Title.*

Caporale next argues that the district court erred by admitting a certificate of title for his Ford Mustang. He alleges the State failed to disclose that it intended to offer the certificate at trial in accordance with the court's pretrial discovery order.

Here, at trial the State offered a certified copy of the certificate of title to Caporale's vehicle. This is a public record that would have been available to Caporale throughout the pendency of the case. Moreover, this document belonged to Caporale--it was a certificate of title for a vehicle he personally owned.

Even if we assumed that the court abused its discretion in admitting the certificate of title, such error would be harmless because the certificate was cumulative evidence. Harmless error exists in a jury trial of a criminal case when the court makes an erroneous evidentiary ruling which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to the defendant. *State v. Epp*, 278 Neb. 683, 773 N.W.2d 356 (2009). Erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014).

Before the State offered the certificate of title into evidence, Hanselmann testified about the contents of the certificate. Caporale did not object to Hanselmann's testimony. Additionally, there was testimony at trial that the Ford Mustang was registered in Caporale's name and that shortly before the controlled buy, it was seen parked outside Caporale's residence. Jacobsen also identified Caporale as the driver of the Mustang.

Considering these facts, we conclude that the certificate of title for Caporale's vehicle was cumulative evidence and even if we found that it was error to receive the certificate, such error would be harmless. This argument is without merit.

*Motion to Dismiss After State's Case-in-Chief.*

Caporale argues the district court erred in denying his motion to dismiss the case for failure of proof at the conclusion of the State's presentation of evidence. He contends the court should

have dismissed the case entirely rather than electing to instruct the jury on the lesser-included offense of distribution of methamphetamine. "[Caporale] was prejudiced by the [district court] submitting the matter to the jury on the lesser charge, after the repeated references and evidence by the State about the alleged offense having occurred near a park or playground." Brief for appellant at 29.

We conclude that Caporale has failed to preserve this issue for review on appeal. As the State notes, when the district court elected to instruct the jury on the lesser-included offense, Caporale did not object. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020). Because Caporale failed to object to the court's decision to instruct the jury on distribution of methamphetamine, we will not address this argument.

*Jury Instructions.*

Caporale argues that the district court erred in failing to give his requested jury instruction regarding eyewitness identification testimony. We conclude that the court's refusal of the instruction was not reversible error.

In reviewing a claim of prejudice from jury instructions given or refused, the appellant has the burden to show that the allegedly improper instruction or the refusal to give the requested instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Pope*, 305 Neb. 912, 943 N.W.2d 294 (2020). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *Id.*

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *Id.* In this case, we need not determine whether Caporale's tendered instruction is a correct statement of the law, because we determine that based on the evidence in this case, the instructions actually given by the district court were adequate and Caporale was not prejudiced by the court's refusal to give his proposed instruction on eyewitness identification.

The only eyewitness in this case who identified Caporale was Jacobsen. Wiley and Hanselmann were also eyewitnesses and were able to describe the red Mustang allegedly driven by Caporale, which they observed parked outside of Caporale's house prior to the controlled buy; however, they did not identify Caporale at trial. Therefore, Jacobsen is the only witness to whom Caporale's proposed jury instruction might apply.

In *State v. Freemont*, 284 Neb. 179, 817 N.W.2d 277 (2012), the Supreme Court recognized precedent of other courts to the effect that it is reversible error to refuse to give an eyewitness identification instruction where the government's case rests solely on questionable eyewitness identification. The Court in *Freemont* determined that a proposed eyewitness identification instruction was not warranted where identifying witnesses knew the defendant, there was no

indication of racial bias in their identifications, and the identifications were corroborated by other witnesses and by circumstantial evidence. *Id.*

Here, there were no other eyewitness identifications to corroborate Jacobsen's identification of Caporale, and Jacobsen's identification was based on observing an enlarged color photograph of Caporale prior to the controlled buy. Jacobsen had never met Caporale before. However, Caporale does not assert that Jacobsen had difficulty identifying him due to racial differences. The Supreme Court has noted that eyewitness identification instructions are more likely to be required in cases where cross-racial identifications and identifications of strangers are at issue. *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017).

We also note that although Jacobsen's identification of Caporale was not explicitly corroborated by other eyewitnesses and although Caporale was a stranger to Jacobsen, there was circumstantial evidence to corroborate his identification. Such circumstantial evidence includes evidence that Caporale had a red Ford Mustang registered in his name; that Jacobsen confirmed his visual identification of Caporale by identifying Caporale's voice on audio recordings of the controlled buy; and by photographs taken of the red Mustang that showed the driver's face.

The facts of this case did not require an eyewitness identification instruction, and instead we conclude that the general credibility instruction given by the court adequately addressed the issues. For example, the jury was instructed to determine witness credibility by considering, inter alia, the witnesses' "opportunity for seeing or knowing the things about which the witness testified" and any "other evidence . . . that tends to support or contradict the testimony of the witness." We therefore reject this assignment of error.

*Sufficiency of Evidence.*

Caporale next claims that there was insufficient evidence presented at trial to support the jury's verdict of guilty. He asserts that the "identification evidence presented was highly questionable," highlights inconsistencies in Jacobsen's testimony, and further argues that there was "insufficient evidence as to where and how the contraband evidence came into the possession of the [confidential informant]." Brief for appellant at 35-36, 37.

However, in reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020). When a criminal defendant challenges the sufficiency of the evidence upon which a conviction is based, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Section 28-416(1) provides, in relevant part, that "it shall be unlawful for any person knowingly or intentionally . . . [t]o manufacture, distribute, deliver, dispense, or possess . . . a controlled substance." Methamphetamine is a Schedule I controlled substance. Neb. Rev. Stat. § 28-405 (Reissue 2016).

With respect to his conviction, Caporale simply attacks the credibility of Jacobsen's testimony regarding his identification of Caporale and the chain-of-custody of the methamphetamine purchased from Caporale by the confidential informant. But an appellate court

does not pass on the credibility of witnesses or reweigh the evidence; such matters are for the finder of fact. *State v. Guzman, supra.*

According to the testimony and evidence at trial, a confidential informant informed Jacobsen that he could purchase methamphetamine from Caporale, and Jacobsen then set up a "controlled buy" operation with other investigators and the informant. On May 19, 2016, Jacobsen drove the informant to Casey's gas station and observed the informant get into a car driven by Caporale. After Caporale drove around the block, the informant exited Caporale's vehicle and gave Jacobsen a small bag of a crystalline substance he had purchased from Caporale. The crystalline substance tested positively for methamphetamine. Viewing the evidence in the light most favorable to the State, there was sufficient evidence to convict Caporale of distribution of methamphetamine.

*Excessive Sentence.*

Finally, Caporale argues that the district court imposed an excessive sentence. Caporale was convicted of one count of distribution of a controlled substance (methamphetamine) in violation of § 28-416(2)(a), a Class II felony. The maximum penalty for a Class II felony is 50 years' imprisonment and the minimum penalty is 1 year imprisonment. § 28-105. Caporale was sentenced to 4 to 10 years' imprisonment. This sentence is well within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Because the sentence was within the statutory limits, the question is whether the district court abused its discretion. Caporale argues that the district court "appeared to place an undue weight or emphasis on the prior conviction [Caporale] had in 1992." Brief for appellant at 38. Caporale also notes that he had serious health concerns at the time of sentencing, which included "occasional blackouts [and] acute kidney injury and also emphysema." Brief for appellant at 39-40. Caporale also asserts that the fact he cooperated with the presentence investigation process, helped care for his elderly mother, and had maintained regular employment for a period of years were factors that indicated he was a suitable candidate for probation.

However, the court did consider Caporale's health issues, as well as the other matters Caporale outlines in his brief. Prior to pronouncing its sentence, the court stated it had reviewed the presentence investigation and considered all appropriate sentencing factors. The comments made by the district court at sentencing, including comments about Caporale's prior conviction, do not indicate that the court considered any inappropriate factors in reaching its sentencing

determination. Therefore, we conclude that the sentence imposed by the district court did not constitute an abuse of discretion.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in the pretrial and trial rulings complained of by Caporale, that there was sufficient evidence to support the conviction, and that the district court did not impose an excessive sentence. Accordingly, we affirm Caporale's conviction and sentence.

AFFIRMED.