IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. RAMIREZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ISIAH M. RAMIREZ, APPELLANT.

Filed February 16, 2021.    No. A-20-674.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

Sterling T. Huff, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

PIRTLE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Isiah M. Ramirez appeals the order of the district court for Scotts Bluff County denying his motion to transfer his case to the juvenile court. Although Ramirez requests that we consider events that transpired after his appeal was filed and the State raises an issue regarding whether the juvenile court would have had jurisdiction to accept a transfer, we conclude that the determinative issues before us are those raised by Ramirez' assigned errors: did the district court err in denying the motion to transfer and did the district court violate Ramirez' constitutional rights. We find that it did not and therefore affirm.

## II. BACKGROUND

The charges against Ramirez arise out of an incident that occurred on August 22, 2019. Ramirez was 17 years of age at the time, having been born in October 2001. According to an

affidavit attached to the complaint, on that date Ramirez engaged in nonconsensual sexual intercourse with a 13-year-old girl, A.M., who represented herself to be 16 years old, and he recorded the encounter. Thereafter, Ramirez allegedly forwarded A.M. a copy of the video recording.

The State filed a complaint against Ramirez on August 6, 2020, in the county court, charging him with first degree sexual assault, incompetent, a Class II felony; unlawful distribution of an intimate image, a Class IIA felony; and possession of child pornography under age 19, a Class IV felony. He was bound over to district court for trial. On August 14, Ramirez filed a motion to transfer his case to juvenile court and a hearing was held on September 8.

At the hearing on the motion to transfer, the State offered evidence of Ramirez' prior criminal history which consisted of two speeding tickets and a failure to yield citation. The evidence revealed that he graduated high school in June 2020, shortly before the charges were filed against him. He was employed on a full time basis.

Investigator Rob Kiesel of the City of Scottsbluff Criminal Investigation Department investigated A.M.'s allegations. Kiesel testified at the hearing that A.M. was 13 years old at the time of the incident but had posted on social media that she was 16 years of age. She was a runaway at the time, having been removed from her biological parents and placed in foster care, from which she absconded. Once she was returned to her foster parents, they confiscated her cell phone and discovered several sexually explicit conversations and videos, which prompted them to report it to law enforcement. That led law enforcement to execute search warrants on A.M.'s cell phone records. Based upon the information received, a forensic interview was conducted in October 2019.

A.M. disclosed being sexually assaulted by three individuals on August 21 and 22, 2019, including one named "Isiah," although she did not know his last name. She alleged that Isiah and his friend picked her up in a white pickup and they both sexually assaulted her. She stated that they also recorded the incident without her knowledge and sent the video to her afterward. She described another sexual assault by another individual that allegedly occurred shortly thereafter.

Kiesel's first contact with A.M. was on December 27, 2019, at the police department, after which he was able to apply for a search warrant for her Snapchat account, another social media platform. She could not identify Ramirez by his full name until Kiesel's second interview with her on February 9, 2020. Thereafter, Kiesel applied for a search warrant on Ramirez' Snapchat account, A.M.'s Snapchat account, and on a group account of which Ramirez was a member. Kiesel received the last information from Snapchat in April.

Included within the information Kiesel received from Ramirez' social media accounts were explicit sexual videos, including the one of A.M. and Ramirez. Other similar videos were discovered but they did not include A.M. or Ramirez. Kiesel interviewed Ramirez on May 13, 2020. Ramirez initially denied knowing A.M., but after being shown a still picture from the video, he admitted that they had a sexual encounter, but insisted that it was consensual and that A.M. requested that it be recorded.

Frances Romero from District 12 probation testified that an evaluation for a juvenile charged with sexually offending takes at least 30 days to complete and sometimes takes up to 3 months to get back. Treatment varies on the extent of the violation; some violators need inpatient treatment which can take 6 to 9 months. Following inpatient treatment, the juvenile needs to see a

community provider for an additional 3 to 6 months. According to Romero, it would have been better if the prosecution would have moved forward earlier so services could be put in place, if needed. According to her they "would be fortunate" if they could get the psychological evaluation back before Ramirez turned 19 since the hearing was about 6 weeks prior to Ramirez' 19th birthday.

Ramirez called his mother to testify on his behalf. She is a single mother of three children and described Ramirez as a responsible child who often helps out with his younger brother. From 2014 to 2018, Ramirez was involved in basketball, football, and track. The family moved to Gering in 2019, and Ramirez chose to get a job rather than engage in extracurricular school activities. She reported having no problems with him prior to this incident. She denied him being involved with a street gang and opined that he understood the nature and seriousness of the charges.

On September 15, 2020, the district court denied the motion to transfer. It set forth the factors in Neb. Rev. Stat. § 43-276 (Reissue 2016). As to the first factor, the type of treatment that the juvenile would be amenable to, the court stated:

[Ramirez] has not been involved in prior juvenile court proceedings, so it is not known by history how he would respond to those interventions. The probation officer who testified informed the Court that the juvenile court programs would be practically unavailable because [Ramirez] will reach the age of 19 in October of 2020. Treatment options for juvenile sex offenders can take up to a year.

Weighing the other factors, the court concluded that the alleged offense involved "serious violence and aggressiveness." It found the motivation was "personal sexual gratification" and that supervision should continue past the age of minority. The best interests of Ramirez would be found in some type of correctional treatment and a transfer to juvenile court would provide no real opportunity to use the justice system to change his behavior. It determined that public safety is best served by long term control over his behavior. The court concluded that Ramirez "appears to lack a sense of basic morality -- having sex in a car with a young girl, a stranger, who said she was older than she is, is okay."

Overruling the motion to transfer, the court explained "Two facts stand out in this case -- one, this was a violent assault against a young girl, and two, because of [Ramirez'] age, there is no practical way the appropriate juvenile court rehabilitative services could be applied to his case." Ramirez timely appealed.

Subsequent to the appeal being filed, Ramirez filed a motion to supplement the record with this court. He claimed that A.M. had since recanted her accusations and that the encounter between her and Ramirez was consensual, that she lied about her age, and that she requested the incident be recorded. Ramirez argued that because the district court denied the motion to transfer in large part due to the violent nature of the allegations of sexual assault and those allegations no longer existed, the matter should be either scheduled for supplemental briefing or remanded to the district court with instructions to transfer to juvenile court. We denied the motion to supplement the record but ordered supplemental briefing on the issue of this court's ability to review facts that occurred after the date of the appeal.

## III. ASSIGNMENTS OF ERROR

Ramirez assigns that the district court abused its discretion in overruling his motion to transfer and violated his constitutional rights of presumption of innocence, due process, and equal treatment by failing to timely act.

## IV. STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Bluett*, 295 Neb. 369, 889 N.W.2d 83 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

## V. ANALYSIS

### 1. FACTS OCCURRING DURING APPEAL

We first address Ramirez' request that we consider facts that occurred after the appeal was perfected. Ramirez argues that we should remand the case with directions to transfer to the juvenile court based upon A.M.'s alleged recantation of sexual assault. At oral argument, the State disagreed as to the extent of A.M.'s recantation. We determine that the issue before us is whether the district court erred in denying the motion to transfer based upon the evidence before it at that time; therefore, our review is limited to that same evidence.

Appellate courts are error correcting courts. As has been often stated, "In the absence of plain error, when an issue is raised for the first time in an appellate court, the issue will be disregarded inasmuch as the trial court cannot commit error regarding an issue never presented and submitted for disposition in the trial court." *State v. Molina*, 271 Neb. 488, 529, 713 N.W.2d 412, 447 (2006). Similarly, an appellate court is limited to evidence contained in the record. See *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011). A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *Id*.

Although Ramirez sought leave to supplement the record, we denied the motion. The case is before us on an appeal of the denial of a motion to transfer. By statute, such order is immediately appealable and such appeal must be perfected within 10 days of the date of the order. See Neb. Rev. Stat. § 29-1816(3)(c) (Cum. Supp. 2018). The statute provides an expedited review of such orders. See *id*. We therefore find it imprudent to prolong resolution of the issue to allow the parties to bring forth matters that have arisen after the date of the appeal. To do so could indefinitely delay the resolution of the appeal. Furthermore, Ramirez conceded at oral argument that the effect of the alleged recantation could be addressed by the district court following mandate. We therefore leave the issue for resolution to the district court.

### 2. JURISDICTION OF JUVENILE COURT TO ACCEPT TRANSFER

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district court over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court.

Neb. Rev. Stat. § 43-247(2) (Reissue 2016) gives juvenile courts jurisdiction over "Any juvenile who has committed an act which would constitute a felony under the laws of this state and who, beginning July 1, 2017, was eleven years of age or older at the time the act was committed." And § 43-247(12) provides continuing jurisdiction over "any individual adjudged to be within the provisions of this section until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction." Neb. Rev. Stat. § 43-245(11) (Supp. 2019) defines the term "juvenile" to mean "any person under the age of eighteen."

The State argues that because Ramirez was 18 years of age at the time the charge was filed, he was not a "juvenile" as that term is defined by statute. Consequently, because § 43-247 grants the juvenile court jurisdiction over juveniles, it would not have had original jurisdiction over Ramirez and therefore, the case could not be transferred to it under § 29-1816. It further argues that § 43-247(12) grants continuing jurisdiction to the juvenile court only over those individuals who were under 18 years of age when the case was filed. According to the State, the district court could not have transferred the case to the juvenile court as a matter of law because the juvenile court would not have had jurisdiction over Ramirez at the time the case was filed.

Although the State raised this issue before the district court in its closing arguments, the district court decided the motion to transfer by evaluating the factors set forth § 43-276(1). The State has not cross-appealed this decision, therefore, it has not preserved it. See, *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020) (state's right to appeal is purely statutory); § 29-1816(3)(c) (authorizing appeal by either party of court's order on transfer). We therefore review whether the district court abused its discretion in applying the factors set forth in § 43-276(1).

### 3. STATUTORY FACTORS TO DETERMINE MOTION TO TRANSFER

Section 29-1816 requires the district court to consider the factors set forth in § 43-276(1) when deciding a motion to transfer. They are:

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing, and "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court[.]" See § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id*. "The burden of proving a sound basis for retention lies with the State." *Id*.

In its order, the district court identified each of the factors and the evidence that it found relevant to it. On appeal, Ramirez takes issue with nearly all of them. He asserts that the district court evaluated the motion under the assumption that Ramirez was guilty, pointing to the first factor, "the type of treatment the juvenile would most likely be amenable to." He asserts this, in and of itself, indicates that the defendant is presumed guilty; otherwise, the issue of treatment would not exist. We disagree.

We first note that the factors to be considered in deciding a motion to transfer a case to juvenile court are the same factors that a prosecutor is to consider in deciding whether to file a criminal charge or file a juvenile court petition. See § 43-276(1). These factors must be considered, therefore, not under a presumption of guilt, but rather with an eye toward what court is best suited to address the needs of the public and the accused juvenile, if convicted. In deciding a motion to transfer, the court engages in a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *State v. Stevens, supra*. It is only after considering all the evidence and reasons presented by both parties at the hearing that the court makes a determination on a motion to transfer. See § 29-1816(3)(a). We therefore reject Ramirez' contention that the court presumed Ramirez was guilty when analyzing the required factors.

Section 43-276(1) sets out factor (a) as the "type of treatment such juvenile would most likely be amenable to." As stated above, implicit in this factor is the phrase "if convicted." Because the duration and type of treatment differs between juvenile and adult court, the court must necessarily determine what type of treatment is most appropriate if the accusations are determined to be true. We find no presumption of guilt in this factor and we reject Ramirez' claim of a constitutional violation by the district court.

The district court relied upon the probation officer's testimony that juvenile court programs would be practically unavailable because Ramirez was nearly 19. We agree. This factor weighs in favor of the district court retaining jurisdiction.

Ramirez again raises a presumption of guilt argument in factor (b), "whether there is evidence that the alleged offense included violence." But the language of this factor defies that argument by the use of the words "alleged offense." Ramirez argues that no violence was involved because Ramirez believed A.M. to be 16 years old and their encounter was consensual. However, one of the alleged offenses was first degree sexual assault, obviously a crime of violence. The

evidence at the hearing was that A.M. denied the encounter was consensual. We find no error in the court's determination that the alleged offense was one of violence which weighs in favor of retaining the matter in the district court.

The court found the motivation for the offense, factor (c), was sexual gratification; Ramirez describes it as "teenagers touching each other." Brief for appellant at 16. Given the nature of the charge, A.M.'s age, and her denial that it was consensual, we agree this factor weighs in favor of retention.

Ramirez does not dispute his age as it relates to factor (d), but rather focuses on A.M.'s deceit in claiming she was 16 years old. Given Ramirez' age, we find this factor also weighs in favor of retention because it affects the amount of time the juvenile court could retain jurisdiction over him.

The district court also found that factor (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; and (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority, all weighed in favor of retention. We agree.

Again, relying upon the presumption of innocence, Ramirez argues that it is in his best interest that "these charges are dropped so he can get back to the life of a young man who just graduated from highschool [sic]." Brief for appellant at 16. We disagree. The district court is not required to disregard the allegations made against a defendant or the adverse evidence presented at the transfer hearing. Rather, based upon the evidence presented, the court is required to determine whether a sound basis exists for it to retain jurisdiction. Here, if convicted, the evidence supports the court's determination that Ramirez' best interests would be served by some type of correctional treatment that would extend beyond his minority. Ramirez argues that the best interest of the juvenile and security of the public "is likely the most profound factor." Brief for appellant at 17. Under this factor, he contends that the State "intentionally waited" until Ramirez was about to turn 19 years old to file charges and this violated his rights to due process. *Id*. We disagree.

In closing arguments to the district court, Ramirez raised the issue of delay, but he did not argue it as a due process challenge. Rather, he incorrectly stated that Ramirez was identified as a suspect in January 2020 and charges were not filed until August. He stated "so we spent the better part of a year waiting until he's creeping up on his 19th birthday to unfortunately move forward, which is not his fault, he shouldn't have to pay the price for that." We reject his argument that there was an intentional delay.

The incident occurred on August 21, 2019, but charges were not filed until August 6, 2020. However, Kiesel outlined the investigatory steps that were taken and the challenges involved in identifying Ramirez due to A.M.'s inability to provide his last name. She did not provide his full name until February 2020. Following that disclosure, Kiesel requested and executed search warrants on several social media accounts and received the last documents in April. He interviewed Ramirez on May 14. The record does not disclose what transpired between May 14 and August 6, the date on which the complaint was filed, but even if the complaint was filed in May, it would not have made any measurable difference. Considering Kiesel's testimony, we cannot find that the State intentionally delayed the filing of the complaint.

The district court found the remaining factors either neutral or in favor of transferring jurisdiction. Upon our review of the evidence and the court's order, we find no abuse of discretion in its decision to deny the motion to transfer and to retain jurisdiction in the district court.

## 4. EQUAL PROTECTION

Ramirez assigned that the district court's order violated his constitutional right to equal protection, but did not argue this assigned error, nor did he raise it before the district court. Consequently, we do not address it. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be addressed on appeal. *State v. Denton*, 307 Neb. 400, 949 N.W.2d 344 (2020). As a general rule, an appellate court will not consider an argument or theory that is raised for the first time on appeal. *State v. Kruse*, 303 Neb. 799, 931 N.W.2d 148 (2019).

## VI. CONCLUSION

Finding no abuse of discretion, we affirm the order of the district court denying Ramirez' motion to transfer his case to the juvenile court.

AFFIRMED.